## RABINOVITZ v. OUGHTON.[*]

### In re ROMLEY CLOTHES, Inc.

#### No. 6202.

Circuit Court of Appeals, Third Circuit.

Sept. 28, 1937.

Thomas F. Gain, William H. Kresch, Victor H. Blanc, and Blanc & Steinberg, all of Philadelphia, Pa., for appellant.

John Harper, Arthur Littleton, and Morgan, Lewis & Bockius, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a final decree of the District Court ordering the appellant to turn over $23,150 as part of the estate of the bankrupt to the appellee, trustee in bankruptcy.

There are two questions involved. The first one is whether or not the appellant's claim was adverse or merely colorable. The District Court held that it was merely colorable and in summary proceedings made the turnover order. If it was adverse, the court erred, and the trustee had to proceed by means of a plenary suit.

The appellant was president and owner of 95 per cent. of the stock of Romley Clothes, Inc., the bankrupt. The remaining shares belonged to Isadore Morrow, secretary of the firm, against whom a separate turnover proceeding is pending.

On March 31, 1933, an involuntary petition was filed against Romley Clothes, Inc., and in April it was adjudicated a bankrupt. The cause was referred to John M. Hill, referee in bankruptcy. In June, Charles T. Oughton, appellee, was elected trustee, and on November 27 he filed a petition with the referee wherein he prayed for a rule to show cause why the appellant should not be ordered to turn over cash items amounting to $31,960.28 (later reduced to $23,655.81), 2,320 pairs of trousers (later reduced to 2,278), and 1,117 coats (later reduced to 1071).

The evidence produced at the hearings before the referee involves many interrelated and complicated transactions and accounts. Out of a great mass of facts the following stand out as the more important:

On March 25, 27, 28, and 29, 1933, the appellant withdrew from the bankrupt company sums of money amounting to $10,-

[*]Rehearing denied Nov. 2, 1937.

000; $7,500 of this was raised by selling for that amount certain accounts which aggregated $14,376. Shortly after the sale the purchaser collected them in full. All the other accounts which the appellant did not dispose of, he admits were worthless. He says that this $10,000 was in payment of a loan made by him to the bankrupt in January, 1933. The books of the company do indicate that he had loaned it that amount, but they also indicate that he owed the company $7,994.19 on January 1st of the same year, which he admits. All of his transactions with the company were kept in three different accounts and these show that the bankrupt owed him only $468.64 on March 24, 1933. It is apparent, therefore, that when the appellant, within the next five days, withdrew the $10,000 he took from the bankrupt $9,531.-36 more than it owed him. Credit, however, was given to the appellant for $1,-500 paid to one Rosenbaum. This reduced the amount wrongfully appropriated to $8,031.36. The referee, because of certain other minor computations, further reduced this to $7,994.19, and ordered him to turn over that amount. The appellant says that this should be reduced still further because he had assumed liability for a debt of the bankrupt to one Drissel. The referee, however, did not allow this credit for the reason that "there is no evidence either that Rabinovitz paid Drissel this amount, or any other amount, or that Drissel relinquished his claim against the corporation."

The referee also ordered the appellant to turn over $15,155.81 to the trustee. He reached that figure as follows: Between May 5, 1932, and March 29, 1933, the appellant withdrew from the bankrupt company $30,623.13. He was allowed a credit on this sum for $15,467.32, consisting of $13,200 for salary, and $2,267.32 for other minor items. These credits ($15,467.32) subtracted from $30,623.13 leaves the $15,-155.81 which the appellant was ordered to turn over to the trustee. He contends that he should be given a further credit of $9,375, which represents the sum of alleged dividends declared by the bankrupt company and received by him. He produced an account book containing entries made on March 29, 1933, two days prior to the filing of the petition in bankruptcy, which purported to show that on June 3, 1932, a dividend in the sum of $10,000 was declared, representing dividends payable in March, June, September, and December of 1931 and March and June of 1932. This alleged dividend was supposed to have been declared out of a surplus of $10,066.90, which consisted of $5,066.90 in cash and a promissory note for $5,000, made by one Lichtenstein. The transaction for which this note was given was not clearly explained, and the payments thereon had ended prior to the hearings held by the referee. He was not "convinced that there were sufficient net profits on June 3, 1932," to warrant the dividend, and said that the entries were made "on the eve of bankruptcy in an attempt to explain the deficiency of assets."

Within a week or ten days prior to the filing of the petition in bankruptcy, the appellant and Morrow, secretary of the bankrupt company, sold large quantities of merchandise far below cost and $14,376.00 worth of "good" accounts receivable for $7,500, and appropriated all of the proceeds of these sales to themselves, with the result that the bankrupt estate was left with less than $50 in the bank and substantially no merchandise except a few worthless odds and ends.

The referee was justified in saying that their actions "savored of a premeditated plot to dissipate and loot the bankrupt estate" and that they were "not always frank and responsive, but often contradictory" while giving testimony. The district judge was also justified in saying: "I find as a fact that there was a deliberate plot upon their part to dissipate its assets for their own purposes."

Upon all the evidence the referee found that the appellant was not an adverse claimant; that the $23,150 was in his possession and ordered him to turn over that amount to the trustee. The District Court affirmed the order of the referee, and an appeal was taken to this court.

As stated above, the first question is whether or not the appellant was an adverse claimant.

"Courts of bankruptcy do not permit themselves to be ousted of jurisdiction by the mere assertion of an adverse claim. The court has jurisdiction to inquire into the claim for the purpose of ascertaining whether the summary remedy is an appropriate one. * * * It may disregard the assertion that the claim is adverse, if on the undisputed facts it appears to be merely colorable." May v. Henderson, 268 U.S. 111, 116, 45 S.Ct. 456, 458, 69 L.Ed. 870. Though an officer of a cor-

poration may be an adverse claimant, when that officer is also the principal stockholder, his actions should be scrutinized carefully to prevent fraud on the creditors. The appellant and Morrow completely dominated the bankrupt. "They were its mind, hands, and pockets, and will be treated in the bankruptcy court as if they were the bankrupt, and amenable to its jurisdiction." In re Kornit Mfg. Co. (D.C.) 192 F. 392, 396. They, "as officers of the bankrupt company, were in duty bound to safeguard the assets of the company," Reifsnyder v. Levy (C.C.A.) 88 F.(2d) 287, and "to execute the responsible duties intrusted to their management, with absolute fidelity to both creditors and stockholders," Drury v. Cross, 7 Wall. (74 U.S.) 299, 302, 19 L.Ed. 40. They occupied a position having many duties of a fiduciary nature (Curran v. Arkansas, 15 How. [56 U.S.] 304, 14 L.Ed. 705) and will not be allowed to secure to themselves advantages over creditors (Bradley v. Farwell, 3 Fed.Cas. 1146, Case No. 1,779; Corbett v. Woodward, 6 Fed.Cas. 531, Case No. 3223). The referee and the District Court found that the appellant's claim was not adverse. This finding is amply sustained by the evidence and is binding on us. Boyle v. Gray (C.C.A.) 28 F.(2d) 7.

[redacted] In the second place, the appellant contends that he did not have possession of the property which he was ordered to turn over, but that he had paid it to other persons.

The referee and the District Court, however, found that he was in possession of the money when the petition in bankruptcy was filed, but, even if he had paid the money to his individual creditors as he asserts, the turnover order could be sustained.

Since the appellant occupied a fiduciary position, he is not relieved of the duty to account for the property merely by placing it beyond his control. "If he has sold it or mingled it with his own, he may be compelled by summary order to restore the value of the property thus wrongfully diverted." May v. Henderson, supra, 268 U.S. 111, at page 119, 45 S.Ct. 456, 69 L.Ed. 870.

The reason a turnover order is not usually granted where the bankrupt is not shown to possess or control the specific property is because the order might be futile. But the appellant has not shown that he is insolvent or in other respects unable to comply with the order of the District Court. Therefore, under the facts of this case the order should be affirmed regardless of appellant's allegation, even if true, that he had paid the money to others. May v. Henderson, supra, 268 U.S. 111, at pages 120, 121, 45 S.Ct. 456, 460, 69 L.Ed. 870.

The order of the District Court is affirmed.