**LUNSFORD v. HAYNIE et al.**

No. 12564.

United States Court of Appeals
Fifth Circuit.

July 14, 1949.

Rehearing Denied Aug. 17, 1949.

604

Ivan Irwin, Dallas, Texas, Harold B. Sanders, Dallas, Texas, for appellant.

James P. Swift, Dallas, Texas, Wm. Madden Hill, Dallas, Texas, Claude Williams, Dallas, Texas, Orrin Miller, Dallas, Texas, William P. Fonville, Dallas, Texas, for appellees.

Before HUTCHESON, SIBLEY, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant was the creator, and, during its brief life, the president, the dominating influence in, and except for his wife and· his secretary, the sole stockholder and owner, of Marvins, Inc., his creature, a corporation, which, within less than a year after he formed it, wound up in bankruptcy, largely as a result, as plaintiff claimed and the court found, of his charges against, and withdrawals from, it.

Judgment having gone against him in both a summary proceeding and a plenary suit, he is here complaining in this one appeal of both judgments, and seeking their reversal.

The summary proceeding, begun for small sums and in a small way, has continued in that way. It presents for decision questions

based on appellant's claims that the sums demanded of him came into his possession and are held by him, under a title which is not in subordination, but adverse, to that of the bankrupt, that summary jurisdiction to proceed against him is, therefore, lacking, and that if there is jurisdiction, the judgment is wrong.

The plenary suit began as a scatter gun effort, under Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, to rake appellant fore and aft on the general claim that he had misbegotten the corporation in sin and iniquity and, throughout its brief existence, had misused it for his own benefit and to the injury of the corporation and its creditors. It has continued, as it has begun. It comes to us in that same case without benefit of fact findings and in a more or less jumbled way.

Claiming indiscriminately everything in plain sight and some things more or less hidden, that is making some claims which seem to us obvious and some which seem less plain, the trustee in the plenary suit sued the defendant on various accounts for sums aggregating more than $200,000 and for a decree establishing the trustee as owner in right of the corporation of undivided interests in two tracts of land described in his petition.

As broken down these are the items making up the total sum:

1. For fraud in securing the charter on inadequate capital ..................... $96,492.92
2. For sums paid out by the bankrupt corporation on account of debts and obligations of defendant..... 45,389.02
3. For salaries unlawfully paid him .................... 16,920.00
4. For moneys advanced to pay his personal income taxes 13,500.00
5. For moneys exacted from the corporation as pretended royalties on trade names.. 12,630.00
6. For expenses claimed by him as incurred in connection with the operation of the corporation ............. 13,613.84

Submitted to the court on a great mass of illy assorted evidence taken before the referee in other connections and for other purposes, the district judge, in an opinion marked by the greatest generality, determined that plaintiff had established his right to recover $100,000, and gave judgment therefore. He also awarded plaintiff judgment for the interest sued for in the land but subjected it to tax liens for appellant's personal taxes in such amounts that the judgment is of doubtful value to the trustee.

At any rate, the appellant makes only a feeble attack on that part of the judgment, and we need not pay it much mind.

The opinion, as to the money judgment, does indicate, though it does not expressly state, that the court finds against the claim for the $96,000 sued for in connection with the incorporation of the company, and that it thinks the claims for royalties for the use of trade names are quite extreme, but outside of these indications, the opinion gives no guide, furnishes no clue, to the items making up the amount of the judgment rendered.

In order to obtain a complete judgment of reversal, appellant is, therefore, confronted with the burden of showing that none of the six matters claimed present recoverable items, and to obtain a diminution of the judgment, he is obliged to show that less than $96,000 is recoverable on account of them. We, therefore, will approach the case from that standpoint, taking up, and disposing of, in turn each item claimed.

As to the first and largest item, the alleged liability of appellant for $96,000, by reason of the method and manner of incorporation of Marvins, Inc., we are quite clear, upon the authorities [1] he cites, that appellant is right in his contention that no right of recovery on this item is shown, and upon the indication in the opinion that it did not enter into the judgment rendered.

Upon the second matter of recovery, however, the liability of appellant for withdrawal of funds from the corporation in the amount of $45,389.02, we think the

---

[1] McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171; Dysart v. Flemister, Tex.Civ.App., 140 S.W.2d 350; Thomason v. Miller, Tex.Civ.App., 4 S.W.2d 668.

matter stands quite differently. Without going into detail with regard to it, it is sufficient to say that defendant's act, in procuring payment by the corporation of these sums and pretending to compensate it by cancellation of $48,000 of common stock, was bare faced and inexcusable appropriation to his own personal use of funds of the corporation impairing, indeed depriving the corporation of, the working capital needed to do business and rendering it completely vulnerable to the insolvency which almost immediately ensued and the consequent bankruptcy. The fact that this was done without resolution or authority of the board of directors, in our opinion, adds nothing to, detracts nothing from the deliberate misuse and abuse of a practically solely owned corporation, and no justification whatever for it in law or in fact may be found.

Excessive salaries paid without corporate authority for their payment presents a somewhat, but not wholly, similar question. The similarity lies in the fact that treating the corporation as his alter ego and its money as his own, defendant, without corporate resolution or authority so to do, paid himself a salary which from the beginning was wholly disproportionate to his services and toward the end was nothing more than an appropriation of the company's funds without any return therefor.

For the first four months, defendant paid himself regularly a monthly salary of $1,-500. Thereafter when the company was tottering toward its fall and the handwriting on the wall became plain, defendant did not draw a salary regularly but in jumps. His February salary was paid in April. In June he paid himself accumulated salary for March, April and May. In July he was paid for June and July and in advance for August.

■ Appellant argues with force and some support in the authorities that the mere fact that no corporate resolution can be found authorizing the payment of the salary is not sufficient to overcome the fact of the recognition and acceptance by the company and its stockholders of the fact that the salary was being paid, but the absence of the corporate minute is not the root of plaintiff's difficulty. This lies in the fact that the suit is not between him and the stockholders but between him and corporate creditors of a creature wholly his own, and that without formal authority for his drawings, the burden lies heavily on him to show that the exacted salary was reasonable and, if not, what was a reasonable amount. Had he shown this, he might have sustained the whole or a considerable part of the regular salary payments made before his steady drive to despoil the company had begun. The record, however, fully supports a finding that the salaries exacted were unreasonable from the beginning and in the end represented a sheer misappropriation of funds. The judgment for their return is well supported.

■ As to the item for moneys exacted from the corporation as pretended royalties on trade names stands no better. It is true that appellant testified that in January, 1947, there was a license agreement made between himself and the company and that the other stockholders, his wife and his secretary, approved the agreement. But it is also true that dealing, as defendant did here, with his creature, it was incumbent upon him to prove not merely that he made the agreement, but that it was a reasonable one. We cannot say that the record does not support a finding that this was just another of the devices by which the appellant was enabled to carry out his purpose of milking the corporation dry and leaving nothing of substance to the creditors. The inclusion of this item in the judgment is supported by the record.

■ Throughout appellant argues this case as though the burden was upon the trustee to prove that payments made to him as salaries and as royalties and for expenses were unreasonable. The contrary is true. In this contest, not between him and the stockholders but between him and creditors of the corporation he has wrecked, the burden is upon him to make a showing of honesty and fair dealing.

The last two items have basically to do with the correctness and allowability of appellant's expense accounts against the corporation. One of these items, the claim for $13,500 is admittedly due by appellant, un-

less, as claimed by appellant, it was discharged on June 30, by an offsetting entry on the books crediting against it an unreimbursed expense account of $13,657.84. The other is a direct claim to recover from defendant an additional $13,613.84 paid to him by the corporation in reimbursement for expenses claimed.

The evidence shows that the claims to these expenditures are supported by weekly expense accounts of defendant from the time the corporation came into existence until June 30, 1947, and that while these expense accounts do contain items which are not properly chargeable to the corporation, they do contain many which are, and that, because of their itemization, they are susceptible of having the recoverable items of the accounts separated from the bad. We are, therefore, of the opinion that to the extent that the judgment included the complete disallowance of these expense accounts, it was error.

■ It does not follow, however, that the recovery from defendant of the $13,500 advanced to pay his personal income taxes was erroneous. It was not. An admitted obligation to the corporation, defendant's efforts to offset it were unavailing under the circumstances of the company's condition at that time which had been brought about by him, and the recovery of the amount advanced must stand, this, however, to be without prejudice to the right of the appellant to prove his claim as a general creditor in bankruptcy for such unreimbursed expenses, if any, as he can show were reasonable and proper.

The money judgment in the plenary suit is, therefore, affirmed for $88,439.02, the aggregate of items (2), (3), (4), and (5). It is reversed as to item (6), the expense account paid him by the corporation, with directions to re-examine the account and determine what items were and what were not properly chargeable to the corporation and give judgment accordingly.

■ Appellant's attack upon the judgment impressing a trust upon the two tracts of land on Denton Drive, while not overly extended, takes two forms. One of these is that the dealings with the land represented merely a loan to him by the company and not an investment by it in the property. The other is that if the company did at one time have an interest in the property, appellant paid it off by offsetting, against the advances, accumulated royalties due him for use of trade marks.

Without laboring the first point, it is sufficient to say of it that in the situation in which appellant found himself, his unsupported word that the moneys were advanced as a loan to him cannot prevail against the finding under review in view of the notation on the books of the company showing that the corporation had paid out the money for the purchase of the land, and of the fact, which defendant admits, that it was at one time contemplated that the lots would be deeded to the corporation.

The second point, that the advances and loans were repaid to the corporation by setting off royalty payments is no better taken, for this so-called set-off is completely worthless as a defense. The lateness of its entry on July 31, 1947, the day an involuntary petition was filed, makes it unavailable to appellant, but the attempt is also completely discredited by the fact that the credit was first entered on June 30, to "Executive Salaries", and then changed on July 31, to "Property chargeable to Marvin Lunsford".

The judgment establishing a trust on the property is also affirmed.

■ Of the appeal from the summary judgment, we may make short shrift by stating that the facts as found by the referee find full support in the evidence and that we are in no doubt that under them the defendant was not an adverse claimant in his own right under a bona fide claim of title. It is too clear for argument that he received the sums which are the subject of the turn over order as president and agent of the company, that the bankruptcy court had summary jurisdiction to recover them, and that the turn over order was right,[2] and should be affirmed.

Affirmed in part and reversed in part with directions.

2 Rabinovitz v. Oughton, 3 Cir., 92 F. 2d 297; May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870. Cf. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, supra.