**LUNSFORD et ux.**

v.

**COMMISSIONER OF INTERNAL
REVENUE.**

No. 14596.

United States Court of Appeals
Fifth Circuit.

May 14, 1954.

———◆———

H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Special Asst. Atty. Gen., Dept. of Justice, Charles W. Davis, Chief Counsel, and John M. Morawski, Special Atty., Bureau of Internal Revenue, William L. Norton, Jr., Special Asst. Atty. Gen., Melva M. Graney, Washington, D. C., for respondent.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

The additional assessments of income tax proposed by the Commissioner of Internal Revenue against Marvin Lunsford for the fiscal years ended July 31, 1946 and 1947, and against his wife, Jetta Fern, for the calendar years 1946 and 1947 were based in part upon the disallowance of a so-called family partnership, in part upon the alleged receipt of taxable "benefits" from Marvin's, Inc., and in part upon transactions which are not pertinent to these petitions for review. The taxpayers filed separate petitions for redetermination of their respective tax liability with the Tax Court, each alleging the validity of the partnership, denying the receipt of the taxable benefits and claiming credit for an operating loss carry-back incurred in a subsequent year. Among other things, the Tax Court affirmed the determination of the Commissioner that no valid partnership existed for tax purposes among Lunsford, his brother, sister and father during the fiscal year ended July 31, 1946; sustained the Commissioner's finding that Lunsford received certain taxable income from the corporation in 1947, and disallowed for failure of proof the claimed operating loss carry-back. By these petitions for review the taxpayers seek a reversal of the decision of the Tax Court with reference to those three items.

This court has recently had occasion to rule on the validity of the identical partnership here at issue in Scott v. Gearner, 197 F.2d 93. By reference to that case it is disclosed that the Commissioner dis-

Wentworth T. Durant, Dallas, Tex., Robert A. Wilson, Dallas, Tex., of counsel, for petitioner.

allowed the partnership for tax purposes for the years 1944 and 1945, the taxable years immediately preceding those now under review, and by reason thereof assessed additional income tax against Lunsford. To secure the payment of the tax thus assessed, Lunsford and his wife executed a deed of trust covering certain real property located in Dallas County, Texas, to Neal T. Scott, as trustee. Thereafter, under threat of the property being sold in satisfaction of the indebtedness, the remaining partners and representatives of a deceased partner instituted an action against Lunsford, his wife and Scott to enjoin the proposed sale of the property, claiming that it was purchased by Lunsford with partnership funds and asserting their interest therein. The suit was removed to the United States District Court for the Northern District of Texas where the United States, appearing by intervention, asserted the validity of the assessment and sought to recover the taxes claimed and to foreclose the lien of the deed of trust. After trial of the issues thus raised, the district court found on conflicting evidence that a partnership did exist for tax purposes during the taxable years involved, denied the relief sought by the United States and permanently enjoined the defendants from selling or attempting to sell the property by virtue of the deed of trust. Upon appeal to this court, Scott v. Gearner, supra, the judgment of the trial court, insofar as it recognized the validity of the partnership and enjoined the sale of the plaintiffs' interest in the property, was affirmed. However, it was reformed to limit the absolute restraint to the interests of the plaintiffs and to permit foreclosure of the lien against Lunsford's interest for such taxes as were actually due by him.

The complaint in the Scott case was filed July 12, 1950, exactly one month after the petition in the present proceeding was served. The hearing before the Tax Court was had on May 29th, and 30th, 1951, but it was not until May 29, 1952, that its memorandum findings of fact and opinion was handed down. In the meantime, the Scott case was tried in June, 1951, and the formal decree was entered July 3, 1951. The opinion of this court affirming the judgment of the district court as modified was handed down on May 16, 1952. Thereafter, the taxpayers filed with the Tax Court a motion for reconsideration of its decision based in part upon the opinion in the Scott case. The Tax Court, of the opinion that it had "given the best decision within its power * * * on the evidence before it", denied this motion.

The taxpayers urge that the decision of the Tax Court sustaining the Commissioner's determination that a valid partnership did not exist during the taxable year 1946 is not supported by substantial evidence and should be reversed. They insist further that, as to the issue of partnership vel non, the decision in the Scott case is controlling and is res judicata, or, if not, it constitutes an estoppel by judgment insofar as the validity of the partnership is concerned. In reply to these arguments, the Commissioner relies upon the record made before the Tax Court to sustain its findings and urges that since the Scott case was concerned with taxable years prior to those here under review it is not determinative and conclusive under the doctrine of res judicata or collateral estoppel, especially in the absence of a showing that the parties, issues and facts in the two cases are identical and that no intervening change has occurred since the rendition of the prior decision.

■■ Since the decision in the Scott case dealt with the income tax liability of Lunsford and his former wife for their taxable years ending in 1944 and 1945, under settled principles that case is not res judicata of the taxpayers' income tax liability for the years presently under review. Nevertheless, we think that the ruling in that case is controlling here. It was determined there that the partnership did exist and was valid for tax purposes as of July 31, 1945. A little more than seven months later the partnership was liquidated by the sale of the business which it operated. There-

after certain of the property, equitable title to which was adjudged in the Scott case to vest in the individual partners, was purchased by Lunsford with partnership funds. In finding that there was no partnership the Tax Court considered the testimony of Lunsford concerning the negotiations and events beginning in 1943 and continuing up until the time the business was sold. By referring to the record in Scott v. Gearner,[1] supra, we find that substantially the same evidence was before the court in that case. While the Tax Court found on this evidence that the parties never intended to, and did not, form a partnership, the district court, affirmed by this court, found that they did. Inasmuch as the hearing before the Tax Court was held prior to the trial in the district court, although the judgment of the district court was rendered almost eleven months before the Tax Court published its opinion, the taxpayers did not have an opportunity to establish by evidence in the Tax Court the "controlling factual identities"[2] necessary to invoke an estoppel by judgment. Nevertheless, the attention of the Tax Court was directed to the decision in the Scott case, in which the United States had fully submitted the partnership question for determination of the Court. The range of the evidence there extended through the entire time covered by the proceeding in the Tax Court. We thus have the unique situation where the appellate court which has affirmed a finding that a partnership did exist is asked, based on the same facts and circumstances, to affirm a subsequent decision of the Tax Court that a partnership did not result from these identical arrangements and transactions. Both records are before us and entirely proper for consideration,—the one in the Scott case by judicial knowledge of our own records; the one in the instant case by petition to this Court to review the Tax Court decision. In these circumstances we think the administration of substantial justice and the maintenance of judicial integrity require that we follow and enforce our ruling in the Scott case and hold that the partnership should be accorded legal recognition by the Tax Court in this proceeding. To hold otherwise would be to overlook the substance of the matter and to substitute form instead.

In September, 1946, Lunsford formed a corporation known as Marvin's, Inc. Lunsford was president and general manager of this corporation until sometime in 1947 when it was adjudged a bankrupt.[3] In computing Lunsford's income tax liability for the fiscal year ending July 31, 1947, and that of his wife for the calendar years 1946 and 1947, the Commissioner included as income $30,638.04 which Lunsford had received as royalties from the corporation, $28,700.92 he had received as expenses and $2,005.78 representing the gain realized by him from a purported sale of stock to the corporation. The Tax Court found that the evidence offered by the taxpayers in refutation of the receipt of this taxable income was incomplete and inconclusive,[4] and found it necessary to

1. Cf. Tucker v. National Linen Service Corp., 5 Cir., 200 F.2d 858, 862, and cases cited.

2. Argo v. Commissioner of Internal Revenue, 5 Cir., 150 F.2d 67.

3. See Lunsford v. Haynie, 5 Cir., 175 F. 2d 603.

4. Typical of this evidence was the following testimony of Lunsford:
"Q. Where did you get the money that you used to pay off the balance on the Denton Drive property? A. I drew the money from the corporation.
"Q. Now, was that item set up on the corporation books? A. Yes, sir.
"Q. Now, how was the title issued with respect to the Denton Drive property; in whose name was it issued? A. In my name.
"Q. Did you ever repay the money to the corporation that was used to pay off the balance on the Denton Drive property? A. Yes, and no. The accrued royalties that were due me—that I thought were due me, was used to offset that obligation.
"Q. Well, was it just entered against

refer to the opinion of this court in Lunsford v. Haynie, 175 F.2d 603, in order to facilitate an understanding of this evidence. By so doing the Tax Court determined that Lunsford did not realize a taxable gain by surrendering a portion of his stock to the corporation, that his income from royalties was considerably less than the amount stated in the deficiency notice and that the maximum amount he could have received from "expenses claimed, paid without restriction as to use" was $13,613.84. This amount was held to constitute taxable income.

■■■■ The taxpayers acknowledge that the burden was upon them to overcome the presumptive correctness of the Commissioner's determination of liability, but they contend that since the Tax Court conceded that the Commissioner's determination was erroneous as to the item designated as expenses claimed, it was not justified in including the $13,613.84 as income without any evidence to support it. The taxpayers offered no evidence whatever relating to this item, but the Tax Court with commendable fairness concluded, by reference to the Haynie case, that they did not receive more than the amount stated as taxable income from this source. Based solely upon the record made in this proceeding, the Tax Court would have been justified in sustaining the Commissioner's determination with respect to this item *in toto*. Lunsford admittedly withdrew large sums of cash from the corporation for his personal use. Thereafter, he attempted to offset these debits to his account by crediting the account with sums allegedly due him by the corporation.[5] He testified as to a number of these withdrawals and of his attempts to repay them by making formal entries on the corporate books, however, no attempt was made to prove that he was entitled to the credits evidenced by the book entries or that at any time the corporation owed him the amounts for which he took credit. Despite the fact that the deficiency notice specifically advised Lunsford that the amount received "for expenses claimed"[6] was included as income in determining the deficiency, he offered no evidence to prove that he did not receive the money or that it was expended for legitimate expenses. The only mention of expenses found in the record was the testimony of Lunsford's accountant to the effect that a withdrawal of $13,500 made by Lunsford to pay his personal income taxes was offset on the corporate books by entries consisting "Mainly [of] expense accounts turned in by Mr. Lunsford." In this situation we think that the conclusion of the Tax Court was a fair and reasonable one which resolved all doubts in favor of the taxpayers and of which they have no cause to complain.

■■■■ During the latter part of 1946 and the early part of 1947, Lunsford advanced a total of $42,500 to one Robert L. Knetzer in connection with a used automobile business which Lunsford was operating at that time. These advances, evidenced by promissory notes, were to be used to purchase automobiles which were to be delivered to Lunsford. Lunsford testified that the notes were unpaid

---

accrued royalties; is that the entry that was made to offset that? A. No, it was first set up to be paid out of my salaries if and when due and then, along toward the latter part of the Corporation, there wasn't going to be any more salaries, but there were accrued royalties so we attempted to change it from salaries to accrued royalties.

"Q. Do you recall how much that was? A. Mr. Durant, it was approximately $20,000.00, for both lots."

5. A detailed analysis of these transactions is contained in Lunsford v. Haynie, supra.

6. "(b) Payments received from Marvin's, Inc. for expenses claimed, paid without restriction, as to use were, as follows:

| "in 1946 | $ 4,159.18 |
| "in 1947 | 24,541.74 |
| "Total | $28,700.92" |

except for a credit of $3117 covering an automobile delivered to him in 1948. The taxpayers contend that the loans became worthless in 1948, thus entitling them to an operating loss carry-back for the taxable years under review. The only evidence offered to sustain the claim that the notes were worthless at any time was Lunsford's testimony that they had not been paid, that Knetzer "had been thrown into bankruptcy" and that he had tried to locate Knetzer about three months before the hearing. The Tax Court held that this evidence was insufficient to show that the loans became worthless at any time pertinent to the matter in controversy. We agree with this holding. The burden was upon the taxpayers to show by a preponderance of the evidence that the loans were in fact worthless, the taxable year in which they became worthless and that they sustained an operating loss carry-back. The mere statement that Knetzer had been thrown into bankruptcy, in the absence of any further particulars, and the introduction of the taxpayers' income tax returns for the subsequent years furnish no adequate basis to substantiate the claim. In their brief filed with this court the taxpayers seek to strengthen their case by asking us to take judicial notice of the fact that Knetzer was adjudicated a bankrupt in the United States District Court for the Southern District of Illinois on October 21, 1948. We have no authority to do so. Eyster v. Gaff, 91 U.S. 521, 23 L.Ed. 403. The record of that proceeding is not before the court. Neither we nor the Tax Court would be justified in speculating as to what that record might show.

From what we have said, it follows that to the extent the decision of the Tax Court is based upon the disallowance of the partnership for the years under review, it is set aside and the cause remanded for computation of the deficiencies accordingly. In all other things, it is affirmed.