William B. TEASDALE, Trustee in Bankruptcy of Royal Laundries, Inc., and Royal Cleaners, Inc., Appellant,

v.

Charles D. ROBINSON and June Robinson, Appellees.

No. 16636.

United States Court of Appeals
Eighth Circuit.

May 12, 1961.

Rehearing Denied June 12, 1961.

Herbert M. Rope, Kansas City, Mo., I. Frank Rope and Arnold N. Shanberg, Kansas City, Mo., on the brief, for appellant.

Phineas Rosenberg, Kansas City, Mo., for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order of the District Court, entered October 3, 1960, vacating an order of the Referee in Bankruptcy which directed Charles D. Robinson and June Robinson, sole stockholders, directors and officers of Royal Laundries Inc., and Royal Cleaners Inc., bankrupts which prior to bankrupt-

cy were engaged in the laundry and dry cleaning business in Kansas City, Missouri, to turn over to the Trustee of the bankrupts $87,000.00 paid to the Robinsons just prior to the inception of the bankruptcy proceedings. The Referee's order was based upon his determination that this amount of money belonged to the bankrupts and was in their constructive possession at the time involuntary petitions were filed against them, although in the actual possession of the Robinsons; that the adverse claim of the Robinsons to this money was not real and substantial, but merely colorable; and that the court of bankruptcy had summary jurisdiction to order the Robinsons to deliver $87,000.00 to the Trustee in bankruptcy. Upon review of the Referee's order, the District Court held, in effect, that, under the evidence adduced before the Referee, the claim of the Robinsons did not appear to be merely colorably adverse to that of the Trustee and was sufficiently substantial to deprive the Referee of summary jurisdiction to enter the turnover order.

The question whether property of a bankrupt in the possession of an adverse claimant prior to the inception of the bankruptcy proceeding, may be recovered by the trustee in bankruptcy in a summary proceeding in the court of bankruptcy, over the objection of the claimant, or whether the trustee must resort to a plenary action in a court of general jurisdiction, is usually a troublesome one.[1] The applicable law is much easier to state than it is to apply, since what may appear to one judge to be a bona fide substantial adverse claim may seem to another to be merely colorable and a pretense.

The Supreme Court in Cline v. Kaplan, 323 U.S. 97, 98–99, 65 S.Ct. 155, 156, 89 L.Ed. 97, has stated the law as follows:

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia [Petroleum] Co., 309 U.S. 478, 481 [60 S.Ct. 628, 629, 84 L.Ed. 876]. If the property is not in the court's possession and a third person asserts a *bona fide* claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' Galbraith v. Vallely, 256 U.S. 46, 50 [41 S.Ct. 415, 416, 65 L.Ed. 823]; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426 [44 S.Ct. 396, 68 L.Ed. 770]. But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. Harrison v. Chamberlin, 271 U.S. 191, 194 [46 S.Ct. 467, 468, 70 L.Ed. 897]. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. Louisville Trust Co. v. Comingor, 184 U.S. 18, 25–26 [22 S.Ct. 293, 296, 46 L.Ed. 413]. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. MacDonald v. Plymouth County Trust Co., 286 U.S. 263 [52 S.Ct. 505, 76 L.Ed. 1093]."

1. Trustees in bankruptcy usually prefer to have adverse claims adjudicated in the courts of bankruptcy in summary proceedings whenever possible, to avoid delay and expense, whereas the adverse claimants frequently object to such proceedings and insist on plenary actions in other courts, which, it is safe to say, usually do not welcome such controversies. Turn-over orders may be enforced by contempt proceedings, while judgments in plenary actions may not. See, in this connection, Galbraith v. Vallely, 256 U.S. 46, 50, 41 S.Ct. 415, 65 L.Ed. 823.

In May v. Henderson, 268 U.S. 111, 115–116, 45 S.Ct. 456, 458, 69 L.Ed. 870, it was said:

"* * * Courts of Bankruptcy do not permit themselves to be ousted of jurisdiction by the mere assertion of an adverse claim. The court has jurisdiction to inquire into the claim for the purpose of ascertaining whether the summary remedy is an appropriate one within the principles of decision here stated. Mueller v. Nugent, supra [184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405]; Schweer v. Brown, [8 Cir.], 130 F. 328; Id., 195 U.S. 171 [25 S.Ct. 15, 49 L.Ed. 144]; Hebert v. Crawford, 228 U.S. 204 [33 S.Ct. 484, 57 L.Ed. 800]; In re Ellis Bros. Printing Co. [D.C.], 156 F. 430. It may disregard the assertion that the claim is adverse, if on the undisputed facts it appears to be merely colorable. In re Weinger, Bergman & Co. [D.C.], 126 F. 875; In re Rudnick & Co. [D.C.], 158 F. 223; In re Ransford [6 Cir.], 194 F. 658; Michaelis v. Lindeman [D.C.], 196 F. 718."

See, also, 6 Am.Jur. (Rev. Ed.), Bankruptcy, § 80, pages 615–616.

This Court has had occasion to deal with the problem on a number of occasions. See: In re Western Rope & Mfg. Co., 8 Cir., 298 F. 926, 927; Marcell v. Engebretson, 8 Cir., 74 F.2d 93, 97; Smith v. Chase Nat. Bank of City of New York, 8 Cir., 84 F.2d 608, 614–615; Sproul v. Levin, 8 Cir., 88 F.2d 866, 869; Thompson v. Terminal Shares, Inc., 8 Cir., 104 F.2d 1, 5; In re Kansas City Journal-Post Co., 8 Cir., 144 F.2d 812, 813.

Whether an adverse claim is ingenuous or merely ingenious and a sham depends upon the nature of the claim and the facts out of which it arose. The facts and circumstances which gave rise to this controversy between the Trustee in bankruptcy and the Robinsons over the $87,000.00 are substantially undisputed. The bankrupt corporations were adjudicated by consent on January 26, 1959, upon involuntary petitions filed on January 17, 1959. William B. Teasdale was appointed March 4, 1959, Trustee of the property and assets of the bankrupts. He had previously been Receiver for each of the debtor corporations. The bankruptcy proceedings were consolidated, and, for the purpose of this opinion, will be treated as a single proceeding.

On March 6, 1959, the Trustee filed a petition in which he alleged that, upon examination of Charles D. Robinson, President of the bankrupts, it appeared that on or about January 14 through January 17, 1959, pursuant to certain written agreements, copies of which were attached to the petition, he and his wife, June Robinson, the principal officers, directors and stockholders of the bankrupts, received $106,200.00, all or a substantial portion of which is the property of the bankrupts and subject to the claims of their creditors; that the Robinsons hold and claim the funds adversely to the bankrupt estates, have failed to deliver them to the Trustee, and wrongfully retained possession of them without color of right. The Trustee asked that the Robinsons be restrained from disposing of the funds, that a show cause order be entered requiring them to appear and answer, and that they be ordered to turn over the funds to the Trustee. On March 6, 1959, the Referee temporarily restrained the Robinsons from disposing of the funds received by them under the contracts referred to in the Trustee's petition. The Referee ordered them to show cause on March 19, 1959, why they should not be required to turn over the funds to the Trustee.

Upon the return day of the show cause order there was entered a "Special Appearance and Objection to Summary Jurisdiction of Charles D. Robinson and June Robinson with Respect to Trustee's Petition for Order to Turn Over Funds." In response to the show cause order of the Referee, the Robinsons asserted that the Trustee's petition failed to state facts upon which the Referee could exercise summary jurisdiction or

make a turn-over order, because "the Trustee admits without qualification that the $106,200.00 mentioned in said petition was paid to these respondents [Robinsons] pursuant to the terms of two certain written agreements executed January 14, 1959, wherein these respondents as individuals, and other persons, not including the aforesaid bankrupts, were the contracting parties; and because said agreements attached to said Trustee's petition affirmatively revealed that no property belonging to either of these bankrupts was involved in said transactions or under said agreements," and that no portion of the $106,200.00 was paid for any property belonging to the bankrupts.

. The Robinsons also alleged in their response that they were the principal officers, directors and stockholders of the bankrupt corporations; that the agreements attached to the petition were made on January 14, 1959, when down payments of $25,000.00 were made by Deluxe Laundry & Dry Cleaning Company, Deluxe Laundry Services of Kansas, Inc., Deluxe Cleaners of Kansas, Inc., and Deluxe Cleaners and Laundry of North Kansas City, Inc., "to the persons entitled thereto, including these respondents [Robinsons]"; and that on January 16, 1959, the balances due under the agreements, amounting to $81,200.00 were paid according to the terms of the agreements.

The Robinsons asserted that the property involved in the transactions was personally owned by them, except that Mission Royal Laundry and Cleaners, Inc., a Kansas corporation, owned a part of the property.

The Robinsons further asserted that the court of bankruptcy had no jurisdiction over them individually or over the fund in controversy, because it had never been in the possession or under the control of the Trustee or the court and because the Robinsons and the Mission Royal Laundry and Cleaners, Inc., are the owners of the fund; that the fund is held and claimed adversely to the Trustee. and is not retained without color of right; that the claim is made in good faith and involves substantial questions of fact and law which cannot be determined in a summary proceeding to which the Robinsons object; that the remedy of the Trustee is by plenary suit in a court having jurisdiction of the Robinsons, the Mission Royal Laundry and Cleaners, Inc, and the subject matter of the controversy; and that the court of bankruptcy is without jurisdiction to determine the issues raised by the Trustee's petition. They asked that the petition of the Trustee be dismissed for want of jurisdiction.

The Referee in bankruptcy held a hearing upon the question of his jurisdiction, as well as upon the merits of the Trustee's petition. That was proper practice, and counsel for the Robinsons did not contend otherwise, but throughout the hearing preserved objection to the exercise of summary jurisdiction by the Referee. The participation by counsel for the Robinsons in the hearing on the merits of the controversy did not confer consent to the exercise of summary jurisdiction by the Referee. Cline v. Kaplan, supra, at pages 99–100 of 323 U.S., at pages 156–157 of 65 S. Ct. See, also, Inter-State National Bank of Kansas City v. Luther, 10 Cir., 221 F.2d 382, 387.

From the evidence adduced before the Referee, he found:

That on or before January 17, 1959, the Robinsons were the sole stockholders, officers and directors of the bankrupts, Missouri corporations which had been engaged in the laundry and dry cleaning business, with a plant at 3717 Broadway in Kansas City, Missouri.

That the Robinsons had operated a laundry and dry cleaning receiving station at 6311 Brookside, Kansas City, Missouri; that they had owned and operated the Wornall Royal Laundry & Dry Cleaners, Inc., at 8317 Wornall Road, Kansas City, Missouri, a Missouri corporation, which commenced business in July, 1958, with $500 capital, and the Mission Royal Laundry and Cleaners, Inc.,

at 5410 Johnson Drive, Mission, Kansas, a Kansas corporation organized January 5, 1959, with $2,000 capital; that the bankrupts, alone, operated a laundry and dry cleaning plant, at 3717 Broadway, Kansas City, Missouri, which performed the laundry and dry cleaning services for the Wornall and Mission corporations and for the Brookside Receiving Station; that no records disclosing the assets of the Wornall and Mission corporations and the Brookside Receiving Station were available.

That the bankrupts commenced business in December, 1957, and operated continuously until January 17, 1959, when the involuntary petitions in bankruptcy were filed.

That schedules filed in the bankruptcy proceedings disclosed unsecured debts of $161,013.91, of which $78,090 was claimed to be due the Robinsons for the rental of building and equipment and for salary; that Royal Laundries, Inc., admitted $2,932.62 in tax and wage claims; that Royal Cleaners, Inc., admitted $13,114.79 in tax and wage claims; that unsecured claims totaling $76,270.06, of which $22,611.62 are priority claims, were established; and that the Trustee's total realization of assets in the actual possession of the bankrupts was $9,680.73.

That on or about January 14, 1959, the Robinsons entered into two separate, but similar, contracts, one with Deluxe Laundry & Dry Cleaners Company, a Missouri corporation (referred to as "Deluxe of Missouri"), and the other—in which Mission Royal Laundry and Cleaners, Inc., joined the Robinsons—with Deluxe Laundry Services of Kansas, Inc., Deluxe Cleaners of Kansas, Inc., and Deluxe Cleaners and Laundry of North Kansas City, Inc., (which are referred to as "Deluxe of Kansas"); that by the terms of these contracts, Deluxe of Missouri and Deluxe of Kansas paid to the Robinsons $106,200.00.

"That by the terms of the said contract between Respondents [Robinsons] and Deluxe of Missouri, Respondents were paid the sum of $52,000.00, allocated as follows: $50,000.00 for a general restrictive covenant by Respondents to refrain from engaging in the laundry and dry cleaning business in Greater Kansas City in any capacity for a limited period,[2] coupled with the agreement of Respondents to retire and withdraw from any such business in which they were then engaged in any capacity, to refrain from transfer or use of their trade name, to refrain from use, transfer or permission for use of the fixtures, machinery, equipment and real estate situated at 3717 Broadway, Kansas City, Missouri (the premises and equipment occupied and used by the Bankrupts) in the operation of a laundry or dry cleaning business in Greater Kansas City, Missouri; $2,000.00 for the fixtures located at 6311 Brookside and 8317 Wornall Road, Kansas City, Missouri; that payment of the full consideration was made contingent upon performance by Respondents between January 16, 1959, and January 18, 1959.

"That by the terms of the said contract between Respondents and Deluxe of Kansas, Respondents were paid the sum of $54,200.00 allocated as follows: $35,000.00 for a general restrictive covenant by Respondents to refrain from engaging in the laundry and dry cleaning business in Greater Kansas City, in any ca-

---

2. According to the contract, the Robinsons agreed:

"* * * that for a period of five years commencing on January 18, 1959, they will observe the following terms, covenants and stipulations:

"(a) That they will not, either directly or indirectly, engage in the laundry and dry cleaning business in the Greater Kansas City area (as the same is hereafter defined) either as individuals, part-

ners, employees, officers, directors, stockholders, trustees, agents, servants, or in any other capacity.

"(b) That they will retire from, resign and withdraw as officers, employees, managers, or as serving in any other capacity in or with any corporation, firm or partnership with which they are now associated and which is engaged in the conduct of a laundry or dry cleaning business. * * * "

pacity, for a limited period; to retire from and to cease to engage in the laundry and dry cleaning business in Greater Kansas City for a limited period;[3] to refrain from transfer or use of their trade name in the restricted area; $11,200.00 for the assignment of a leasehold at 5410 Johnson Drive, Mission, Kansas; $6,000.00 for a purported lease, maintenance and purchase contract covering a neon sign at an undisclosed location; $2,000.00 for finished laundry and dry cleaning on hand."

The Referee further found:

That, at the date of the contracts and of their execution, the bankrupts were insolvent, with creditors holding substantial unpaid claims; and that virtually the only business of the Robinsons as individuals was as sole stockholders, officers, directors and managers of the bankrupts.

That at, the time of the service of notice of hearing of the petition for the issuance of a turn-over order upon the Robinsons, they had possession of the $106,200.00 received by them between January 14 and January 19, 1959, and were claiming all of this money adversely to the Trustee, as their own personal property.

That "the sums of $50,000.00 and $35,000.00, respectively, paid Respondents [Robinsons] under the contracts in evidence, were paid and received under an agreement on the part of Respondents to terminate operation of the Bankrupts as going businesses and to terminate and prohibit the use of Bankrupts' trade name, fixtures, machinery and equipment, thereby depriving Bankrupts of the intangible asset of good will inherent only in the continued operation thereof as entities, the continued rendi-

tion of service and the continued employment of their trade names in Greater Kansas City. * * *

"That the sum of $87,000.00 of the total sum of $106,200.00 received by Respondents between January 14th, 1959 and January 19th, 1959, is the property of the Bankrupts herein; that the adverse claim of Respondents thereto is not real and substantial, but merely colorable, and is not asserted in good faith; that the said sum of $87,000.00, therefore, is and was at all times material hereto within the constructive possession of the Bankrupts herein; that this Court [court of bankruptcy] therefore possesses summary jurisdiction to order Respondents to turn over the said sum of $87,000 to the Trustee."

■■ The Robinsons, as the officers, directors, creators and sole stockholders of the two insolvent corporations, were, of course, trustees of the corporate property for the benefit of the creditors of the corporations. Ratcliff v. Clendenin, 8 Cir., 232 F. 61, 63; Lytle v. Andrews, 8 Cir., 34 F.2d 252, 254; Lilly v. Ernst, D.C.S.D.Va., 113 F.Supp. 178, 181. The fiduciary obligation of an officer of an insolvent corporation is enforceable by the trustee in bankruptcy. Pepper v. Litton, 308 U.S. 295, 307–308, 60 S.Ct. 238, 84 L.Ed. 281.

A court of bankruptcy has been held to have jurisdiction to enter a turn-over order of funds received prior to bankruptcy by the president of a bankrupt corporation which he created and rendered insolvent. Lunsford v. Haynie, 5 Cir., 175 F.2d 603, 607. See, also, Rabinovitz v. Oughton, 3 Cir., 92 F.2d 297, 298–299, certiorari denied 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110; May v. Henderson, supra, at page 119 of 268 U. S., at page 460 of 45 S.Ct.

3. By the contract the Robinsons agreed "that beginning at 11:59 P. M., Saturday, January 17, 1959, and thereafter, they will retire from and cease to engage in the dry cleaning and laundry business in Johnson County, Kansas, Wyandotte County, Kansas, and Clay County, Missouri, Jackson County, Missouri, and Platte County, Missouri, hereinafter referred to as 'the restricted area', for a period of ten years from said date, January 17, 1959, either as individuals, owners, partners, investors, employees, officers, directors, stockholders, trustees, agents, servants, corporation or in any other capacity, directly or indirectly."

The Circuit Court of Appeals for the Third Circuit in the Rabinovitz case, supra, in sustaining a turn-over order against the president and majority stockholder of the bankrupt corporation, who claimed to be a bona fide claimant, had this to say (at pages 298–299 of 92 F. 2d):

" 'Courts of bankruptcy do not permit themselves to be ousted of jurisdiction by the mere assertion of an adverse claim. The court has jurisdiction to inquire into the claim for the purpose of ascertaining whether the summary remedy is an appropriate one. * * * It may disregard the assertion that the claim is adverse, if on the undisputed facts it appears to be merely colorable.' May v. Henderson, 268 U.S. 111, 116, 45 S.Ct. 456, 458, 69 L.Ed. 870. Though an officer of a corporation may be an adverse claimant, when that officer is also the principal stockholder, his actions should be scrutinized carefully to prevent fraud on the creditors. The appellant and Morrow completely dominated the bankrupt. 'They were its mind, hands, and pockets, and will be treated in the bankruptcy court as if they were the bankrupt, and amenable to its jurisdiction.' In re Kornit Mfg. Co. (D.C.) 192 F. 392, 396. They, 'as officers of the bankrupt company, were in duty bound to safeguard the assets of the company,' Reifsnyder v. Levy (C.C.A.) 88 F.2d 287, and 'to execute the responsible duties intrusted to their management, with absolute fidelity to both creditors' and stockholders,' Drury v. Cross, 7 Wall. (74 U.S.) 299, 302, 19 L.Ed. 40. They occupied a position having many duties of a fiduciary nature (Curran v. Arkansas, 15 How. [56 U.S.] 304, 14 L. Ed. 705) and will not be allowed to secure to themselves advantages over creditors (Bradley v. Farwell, 3 Fed.Cas. 1146, Case No. 1,779; Corbett v. Woodward, 6 Fed.Cas. 531, Case No. 3223). The referee

and the District Court found that the appellant's claim was not adverse. This finding is amply sustained by the evidence and is binding on us. Boyle v. Gray (C.C.A.) 28 F.(2d) 7."

The evidence adduced before the Referee showed that the Robinsons—after unsuccessfully attempting to sell the business and assets of Royal Laundries, Inc., and Royal Cleaners, Inc., to their competitors, referred to as "Deluxe of Kansas" and "Deluxe of Missouri", and to have them assume the liabilities of the two corporations owned and controlled by the Robinsons—successfully adopted the device of agreeing, for a consideration, to put the corporations out of the laundry and dry cleaning business in the Kansas City area. The evidence disclosed that all that the competitors, who paid the Robinsons for entering into these contracts, were interested in was to eliminate the Robinsons and their corporations from the laundry and dry cleaning business, and that that was what was paid for.

■■ It is true that a claim may be fraudulent and voidable and still be an adverse claim which cannot be adjudicated by a court of bankruptcy summarily over the objections of an adverse claimant; but if the claim is "so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense," it is subject to the summary jurisdiction of the bankruptcy court. Harrison v. Chamberlin, 271 U.S. 191, 194–195, 46 S.Ct. 467, 469, 70 L.Ed. 897. In other words, an ingenious adverse claim which is a sham and a pretense is not an ingenuous substantial adverse claim which calls for plenary action in a court other than the court of bankruptcy.

■ Whatever one may call the transactions which resulted in the Robinsons obtaining from the competitors of the bankrupt corporations owned and controlled by the Robinsons, the money which they now seek to retain, the result was a complete sell-out of the good

**116**

will and business of the bankrupts to their competitors, leaving the bankrupts without customers, incapable of continuing in business and paying their creditors, and virtually destitute. That the Robinsons, as officers of the bankrupts and trustees for their creditors, clearly violated their (the Robinsons') fiduciary obligation to the creditors, sold the good will belonging to the bankrupt corporations, and are accountable to the Trustee in Bankruptcy for the proceeds, seems to us obvious. We regard the Robinsons' adverse claim as a sham and pretense.

It is our conclusion that the determination of the Referee in bankruptcy, who was the trier of the facts, was sustained by substantial evidence and that his turn-over order, which we think was more favorable to the Robinsons than they had any right to expect, should have been confirmed by the District Court.

The order appealed from is reversed.