**BRH BUILDERS, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 81–3118.**

United States District Court,
C.D. Illinois,
Springfield Division.

June 3, 1985.

Duane L. Traynor, Traynor, Hendricks & Reed, Springfield, Ill., for plaintiff.

Angelynn C. Hall, Trial Atty., Tax Div., Department of Justice, Washington, D.C., Richard Cox Asst. U.S. Atty., Springfield, Ill., for defendants.

## ORDER

BAKER, Chief Judge.

This matter is before the court on the parties' cross-motions for summary judgment. The parties do not dispute the facts underlying this action. Thus, summary judgment is appropriate. Fed.R.Civ.P. 56(c). Plaintiff has sought oral argument on the contested questions of law. The court, however, has determined that oral argument would not aid in the consideration of this cause.

## FACTS

On May 16, 1983, "Raymur" (a nationwide developer of classroom buildings) entered into a lease agreement with Sangamon State University (SSU or University), the terms of which provided that Raymur would construct metal classroom buildings to SSU's specifications and lease the buildings to SSU for five years, granting SSU an option to purchase the buildings at the end of the lease period. On the same day Raymur contracted for Plaintiff, BRH Builders, to assemble the prefabricated classrooms. As part of its financing arrangement, Raymur assigned the SSU lease to the Continental Illinois National Bank (the Bank). The assignment was recorded with the county clerk and acknowledged by the lessee (SSU) on November 14 and 15, 1973. At that time, the University had already made its first rental payment to the bank on August 20, 1973. BRH continued construction, the Bank remitted checks payable to BRH and Raymur, and Raymur assigned to BRH the amounts owed on completed construction. The Bank's final payment, due October 15, 1973, was made directly to Raymur without obtaining a lien waiver from BRH. Raymur did not pay BRH the balance then owing.

The record does not so indicate, but it is assumed that BRH attempted to secure payment and in the process learned that Raymur was unwilling or unable to pay the amount due. BRH then faced several unattractive options:

1. Record and enforce a mechanic's lien against Raymur. Raymur still held title to the improvements BRH had constructed but the title was subject to a lease with a purchase option and thus was essentially worthless.

2. Record and enforce a mechanic's lien against the bank. The bank as leaseholder could be said to have benefited from BRH's improvements. It certainly had knowledge of the improvements. But the bank had not requested the improvements. Having already paid the $115,000 final installment to Raymur, the bank could be counted on to resist strenuously BRH's equitable claims for relief.

3. Record and enforce a mechanic's lien against the University:

   (a) as lessee or owner of the underlying land (if SSU was the owner of the underlying land, a fact not alleged here) on the theory that the University knew about, acquiesced in and stood to benefit from the improvements. (A few courts have recognized this theory, but the University would certainly resist this equitable claim.)

   (b) as a public entity for which improvements had been constructed. Illinois law provides that a subcontractor may file a lien directly against a public entity where the prime contractor holding a contract to construct a "public improvement" for the public entity has failed to pay the subcontractor for

work performed. Ill.Rev.Stat. ch. 82 § 23. The statute's applicability to BRH was doubtful since Raymur, the prime contractor, held a lease not a construction contract with SSU and the buildings—technically belonging to Raymur—were not clearly "public improvements."

BRH determined that a claim under Ill.Rev. Stat. ch. 82 § 23 had the best chance of succeeding and accordingly filed a lien against the University on January 3, 1974 (the tax year in question). To comply with the state statute's requirements BRH filed an action for an accounting against Raymur on March 1, 1974. It is not clear what response Raymur made to this claim. The University, uncertain as to whom its second annual lease payment should be paid, instituted an interpleader action naming, among others, the bank, Raymur, and BRH as defendants.

The stipulated facts do not indicate but the Court may assume that BRH's tax year 1974 ended on December 31, twenty-two days after the University filed its interpleader action.

BRH claims that as of December 31, 1974, it assessed the likelihood of recovering its $115,000 on its ch. 82 § 23 theory and determined to write off the debt. The IRS contends that at the end of 1974 the debt was not completely worthless as demonstrated by subsequent events:

1. On March 10, 1975, BRH entered a motion for summary judgment on its ch. 82 § 23 claim under Ill.Rev.Stat. ch. 82 § 23.

2. On March 15, 1975, BRH filed its 1974 tax return claiming the $115,000 as a bad debt deduction.

3. On April 10, 1975, the circuit court granted summary judgment to BRH in its action for an accounting, and ordered Raymur to pay to BRH the $115,000 owing. Raymur did not appear at the hearing on the motion.

4. On June 3, 1975, BRH moved to amend the order granting summary judgment so as to require the bank to pay BRH from the University's escrowed lease payments. Essentially this was a motion to enforce ch. 82 § 23.

5. On November 4, 1975, the circuit court approved a settlement of BRH's claim whereby the bank would pay to BRH from escrowed funds $90,000 in satisfaction of BRH's $115,000 claim. The court never ruled on BRH's motion to amend the order granting summary judgment. The bank and the University later apportioned their liabilities in respect to the settlement payment.

The IRS granted Plaintiff a $25,000 bad debt allowance for the tax year 1975 (the $115,000 debt less the $90,000 settlement) and required Plaintiff to adjust its 1974 tax filings to erase the $115,000 bad debt deduction. Plaintiff complied with the IRS' directive and brought this suit claiming a $11,865.66 tax refund resulting from vagueries in the rules for computing tax liabilities which are not at issue here. This Court is asked to decide whether BRH's claim against Raymur was a bad debt as of December 31, 1974.

## LAW

The Internal Revenue Code provides for the deduction from income of all "wholly worthless debts," I.R.C. § 166(a)(1) (1984). A taxpayer must claim a bad debt deduction in the year it becomes worthless. *See, e.g., H.W. Findlay v. Commissioner*, 236 F.2d 959 (3d Cir.1956). The burden of proving worthlessness rests with the taxpayer, *Redman v. Commissioner*, 155 F.2d 319 (1st Cir.1946), who must overcome a presumption in favor of the IRS' determination, *Lundsford v. Commissioner*, 212 F.2d 878 (5th Cir.1954).

The worthlessness of a debt must be determined by "an examination of all the circumstances." *W.A. Dallmeyer v. Commissioner*, 14 T.C. 1282, 1291 (1950). Relevant "circumstances" may exist before or after the end of the tax year for which the deduction is claimed. The strength of the creditor's claim, the solvency of the

debtor, and efforts to collect the debt (before and after the end of the relevant tax year) have been considered in determining a debt's worthlessness. Ultimately, "[t]he date of worthlessness is fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope for the future." *Id.* at 1291.

The IRS' position is essentially: Where there is a law suit there is hope. This bright line definition of worthlessness does have intuitive appeal. No one sues over a worthless debt.

The Commissioner cites a tremendous amount of precedent for the standard he seeks, but the cases he offers appear to support a slightly different proposition: A debt is not worthless, if the parties continue to sue over it, and *there appears to be some chance for recovery. See, e.g., Appalachian Trail Company v. Commissioner*, ¶ 73, 119 P.H. Memo T.C. (continuing to do business with debtor establishes debt not worthless); *J.B. Reilly v. Commissioner*, ¶ 55,007 P.H. Memo T.C. (Some hope that taxpayer, creditor in bankruptcy proceedings, would recover some portion of his debt); *Prescott v. United States*, 4 AFTR 2d 5387 (S.D.Tex.1959) ("So long as the taxpayers were attempting to collect a claim ... which, if allowed, would result in the taxpayers receiving a substantial sum of money," the debt is not worthless).

In the instant case, as of December 31, 1974, the taxpayer, even if his suit for an accounting was successful, was likely to collect nothing. (Raymur was insolvent and a mechanic's lien against Raymur as title holder of the building would be worth nothing since the title was subject to the lease with option to buy). The validity of the taxpayer's claim to protection under Ill.Rev.Stat. ch. 82 § 23 was never reached by any court—although taxpayer did broach it by filing in May of 1975 his motion to order the Bank to pay the accounting Raymur owed BRH. As indicated above, the statute's applicability was doubtful.

The mere existence of a suit at the time a debt is claimed to be worthless does not establish that the debt has value. *See, Zeeman v. United States*, 275 F.Supp. 235 (S.D.N.Y.1967) (Claimant in the Great Salad Oil Swindle was unlikely to recover a dime). The continued prosecution of a suit to quell rumors, *Kugal v. Ryan*, 289 F.2d 329 (2d Cir.1961), or to obtain a worthless judgment, *Redfield v. Eaton*, 53 F.2d 693 (D.Conn.1931), does not jeopardize a claim that the debt was worthless for tax purposes. Here, Plaintiff's prosecution of his request for an accounting might well be seen as merely an attempt to obtain a worthless judgment. However, his subsequent effort to require the bank to pay the accounting out of the escrowed lease payments indicates that Plaintiff felt more sanguine about the collectibility of his debt than would be consistent with a bad debt deduction in 1974. Plaintiff's subsequent recovery of $90,000 by way of settlement agreement demonstrates the judgment of all parties that Plaintiff's claim was not worthless.

Rather than challenge the IRS' bright-line definition of worthless debts, Defendant seeks to distinguish the lien he filed pursuant to 82 § 23 and the lawsuit he prosecuted for an accounting from a lawsuit to collect the debt. He cites Revenue Rule 80–24 in which a purchaser of worthless promissory notes, deducted the value of the notes from his taxable income and then filed suit against the sellers alleging securities fraud and claiming damages equal to the amount paid for the notes. The ruling is inapposite. Ill.Rev.Stat. ch. 82 § 23 was designed as an alternative means to ensure payment of subcontractors, not as any kind of anti-fraud provision. The statute creates a lien and, by implication, an action on the debt itself, not some alternative substantive right to fair dealing.

In light of Plaintiff's continued pursuit of his claim—a claim that subsequent events demonstrate was not frivolous—this Court cannot adjudge the debt worthless as of the end of 1974. Essentially, Plaintiff

cannot have it both ways. A well prosecuted effort to collect the debt cannot now be overlooked in this well prosecuted effort to declare the debt worthless.

### CONCLUSION

As of December 31, 1974, it appeared unlikely that BRH would collect the money due. Nevertheless, BRH continued its suit beyond the end of 1974. Continuing to pursue a debt where there is a likelihood of at least partial collection establishes that a debt is not worthless. Here, the taxpayer continued to pursue a debt where there was little chance of success yet did receive satisfaction of the claim. The strength of BRH's claim against the University argues for declaring the debt worthless in 1974, but the taxpayer's pursuit of the claim and subsequent recovery convinces this court that the claim was not worthless until 1975 and then only as to the $25,000 in excess of the amount received in the settlement agreement.

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment is hereby GRANTED.