source (although one made the soap and the other advertised it); that the cake of soap now offered is not only from the same source as that of plaintiff, but that it has the same excellent qualities and standard, which the purchaser has been taught for 25 years is associated with the original "John H. Woodbury's Facial Soap" and Woodbury's Institute, with the additional inducement that this "new brand" is a great deal cheaper. The latter, while not in itself sufficient, may not be overlooked, where "unfair" means are being used in a sale. The purpose has succeeded.

Therefore, while I cannot see my way clear, in view of previous decisions, to grant the broad injunction asked for in section (1) of paragraph (b) of this complaint, it does seem to me that I am justified, on the facts here, in granting an injunction as asked for in section (2) of paragraph (b), to the extent of requiring a plain, express disclosure on each wrapper, sufficient to reasonably avoid the confusion that now exists, and that the defendant cease from this subtle advertising of its soaps by reference to either "John H. Woodbury" or the Woodbury Dermatological Institute, both of whom were parties to the 1901 agreement, as well as William A. Woodbury, whose orders, etc., defendant claims it is simply carrying out. The "privilege" to use this information is in plaintiff, if in anybody.

As I have said, William A. Woodbury and his associates are not before me; the defendant is, and therefore it alone can be forbidden. This does not mean that William A. Woodbury and his associates, or defendant, need stop making soap, but it does mean that reasonable and sincere ways must be devised, in accordance with this opinion, and as plainly as possible, so that no person, however unwary or careless, need longer be confused as to the respective soaps, or that in buying a William A. Woodbury soap he is buying the original John H. Woodbury's "Facial Soap," originally put out by John H. Woodbury's Dermatological Institute, or *some new brand thereof.*

Decree for plaintiff in accordance with this opinion.

---

### In re WEIN.

(District Court, D. Massachusetts.    May 5, 1926.)

No. 35463.

**I. Bankruptcy ⊙⟞101.**

Sale by creditor of property of bankrupt in his possession after bankruptcy cannot be made lawful by bankrupt's consent.

**2. Bankruptcy ⊙⟞288(1).**

The mere assertion of an adverse claim to property is not sufficient to prevent a referee from taking summary jurisdiction.

**3. Bankruptcy ⊙⟞288(1)—Adverse claim to property delivered to claimant by bankrupt for manufacture into dresses held merely colorable.**

Where bankrupt, a dealer in ready-made dresses, furnished the material to claimants, who manufactured it under contract and charged for their labor they held material in their possession at the time of bankruptcy as bailee, and their claim to its ownership was merely colorable, and did not exclude jurisdiction of a referee to order them to return or account for it to the trustee, subject to their right to a lien for their labor on finished garments.

In Bankruptcy. In the Matter of Albert Wein, bankrupt. On review of decision of referee. Affirmed.

Hannigan & Fox and Meyer L. Orlov, all of Boston, Mass., for trustee.

Lewis, Fox & Andrew, of Boston, Mass., for Douglas and others.

BREWSTER, District Judge. This is a petition to review on the following certificate of the referee:

"I, Arthur Black, referee in charge of the above-named proceeding, do hereby certify that the trustee of the bankrupt has brought a petition, alleging that Nathan Douglas and William Grossman, doing business under the name of Bell Dress Company, are withholding property of the bankrupt, and in which he asks that the respondents be ordered to turn over.

"At a hearing on this petition counsel appeared for the respondents and objected to the jurisdiction of the referee. After a preliminary hearing on the facts I stated to counsel that I would take jurisdiction and hear the matter on its merits. Counsel for the respondents seeks a review of this decision, and the hearing on the merits has been suspended until the determination of this review. The facts disclosed are as follows:

"The bankrupt was in the business of selling ready-made dresses. The respondents, doing business as the Bell Dress Company, were contractors, who manufactured dresses. The bankrupt was accustomed to having dresses made by the Bell Dress Company, and his practice for some time had been to ship to the Bell Dress Company the necessary materials, which the Bell Dress Company in turn made up into finished dresses. As a means of convenience the unfinished materials were charged to the Bell Dress Company when shipped, and the finished dresses were charged to the bankrupt

when returned; credit being given for the materials furnished. I find that this procedure was one of convenience only. In reality, the bankrupt owned the materials and never parted with the title. The Bell Dress Company furnished the labor, and for such undoubtedly had a lien on the finished goods.

"This exact procedure was followed in the case of four bales of cloth shipped to the Bell Dress Company a short time before bankruptcy. Finished dresses were made from this shipment of materials. The Bell Dress Company was unable to obtain pay for its labor before bankruptcy. After bankruptcy, and without consultation with any representative of the estate, the Bell Dress Company proceeded to sell these finished dresses for $342.03, which was much less than they were worth, and kept the proceeds. In defense of this procedure the Bell Dress Company contends that the bankrupt himself directed that the sale be made.

"Under these circumstances, I believe the referee has jurisdiction. The respondents had no title to the goods in question, though they had an undoubted lien for the labor of manufacture. The disposal of the goods after bankruptcy, and with knowledge of bankruptcy, was without justification, and was either a deliberate step to gain a preference over other creditors, or was part of a plan to aid the bankrupt in concealing his assets."

[1] On the facts recited in this certificate, I can readily concur with the learned referee in his belief that he has jurisdiction to proceed further. Apparently the alleged adverse claimants, when before the referee, sought to justify their conduct by showing that they acted with the consent of the bankrupt; but, the sales having been made after bankruptcy proceedings had been instituted, the referee was entirely correct in holding that the disposition made of the property by the claimants was wholly unlawful. May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870.

[2] When the case was submitted to this court, apparently for the first time, the Bell Dress Company asserted a claim of ownership in the property. They now claim that they had title to the materials and finished dresses, and were at liberty to dispose of them as their own property. But the mere assertion of a claim is not enough to prevent the referee from taking jurisdiction. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405; May v. Henderson, supra.

[3] The claim must be more than colorable. I am of the opinion in this case that the

claimants present only a colorable claim, with no basis in fact or in law. The property was in their possession as agents, or bailees, of the bankrupt, and was constructively in custodia legis at the time the claimants undertook to dispose of it. They should account to the trustee for the property which they hold as such bailees.

---

### UNITED STATES v. DWYER et al.

(District Court, S. D. New York. May 11, 1926.)

1. **Indictment and information ⬅111(1)—Indictment for conspiracy to violate Prohibition Act need not include any defensive negative averments** (National Prohibition Act, tit. 2, § 32 [Comp. St. Ann. Supp. 1923, § 10138½s]).

Indictment for conspiracy to violate Prohibition Act need not include any defensive negative averments, in view of National Prohibition Act, tit. 2, § 32 (Comp. St. Ann. Supp. 1923, § 10138½s), permitting such procedure in case of indictment for violation of prohibition statute.

2. **Conspiracy ⬅43(6)—Indictment for conspiracy need not allege crime any more elaborately than when charged as substantive offense.**

Crime which is object of unlawful conspiracy requires no more elaborate statement in indictment than is necessary for allegation of crime charged as substantive offense.

3. **Indictment and information ⬅111(1)—Indictment for conspiracy to violate Prohibition Act held not demurrable for failure to negative possibility that objects of conspiracy were lawful, where indictment alleged that acts were in violation of Prohibition Act** (National Prohibition Act, tit. 2, § 3 [Comp. St. Ann. Supp. 1923, § 10138½aa]).

Indictment for conspiracy to violate the Prohibition Act *held* not demurrable for failure to negative possibility that objects of conspiracy were lawful, under National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), where indictment set forth that acts were in violation of Act Cong. Oct. 28, 1919, commonly known as National Prohibition Act, as such language sufficiently negatived possibility that acts would be within permissive terms of statute.

4. **Indictment and information ⬅121(1).**

Any prejudice to defendants by reason of generalities or vagueness in indictment may be overcome by bill of particulars.

Prosecution by the United States against William V. Dwyer and others for conspiracy to commit an offense against the United States. On demurrer to the declaration. Demurrer overruled.

Emory R. Buckner, U. S. Atty., of New York City (Herman T. Stichman, John M.