**K. D. KYLE, Appellant,**

v.

**Ernest L. STEWART, Trustee of P & M Manufacturing Co., Inc., Appellee.**

**No. 22321.**

United States Court of Appeals
Fifth Circuit.

May 17, 1966.

---

24. Defendants' Answer, Fifth Defense.

25. Ibid., Fourth Defense.

John P. Corcoran, Jr., William E. Henson, Jr., Tampa, Fla., for appellant.

John R. Trinkle, Jr., Tampa, Fla., Allen, Dell, Frank & Trinkle, Tampa, Fla., of counsel, for appellee.

Before PHILLIPS,* JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case presents again the frequent problem of summary jurisdiction versus a plenary suit in a Trustee's efforts to recover property (or proceeds) of the Bankrupt Estate. Kyle, the Respondent-Appellant, was a principal stockholder, the executive vice-president, and a director of the corporate Bankrupt and received the properties in question as a result of a prebankruptcy liquidation agreement executed by all of the three stockholders. The Referee, affirmed by the District Court on petition to review, upheld summary jurisdiction. We agree and affirm.

Although the Appellant cannot submerge the desire to digress into facts and a half dozen other claimed errors, ours is a single question, and accordingly the facts, neither complex nor conflicting, may be severely compressed.

The stockholder-directors of P & M [1] the corporate Bankrupt, were Kyle, the Appellant, owning 25% with Mills and Black owning the remaining 75%. Mills and Black were also the owners of Southern Gas,[2] although the relevance of that fact to this appeal is difficult to discern.

Whether on February 18, 1962, P & M was insolvent in either the bankruptcy or business sense, the Company had, by that time, come on hard times, business was not good, current losses were being incurred, and it was tardy in the payment of many of its current obligations. At that time a "liquidation agreement" was executed by all three persons signing as "stockholders." Its opening para-

---

* Senior Judge, Tenth Circuit, sitting by designation.

1. P & M Manufacturing Co., Inc., of Tampa, Florida.

2. Southern Gas Equipment Company located in Macon, Georgia.

graph declared that it "has been agreed between the stockholders of P. & M. Mfg. Co., that the following steps will be taken towards liquidation of the said company." This major theme was reiterated in its closing lines. "It is agreed by the stockholders that the liquidation of P. & M. Mfg. Co. will be completed as rapidly as possible." The agreement consigned the complete inventory to Kyle for sale by him, the proceeds thereof to be paid over to P & M for distribution by the corporation to creditors and stockholders in a specified order of priority.[3] The corporate debts included three promissory notes payable to Kyle aggregating $7,500 for funds advanced the corporation.

Thereafter, about March 24, 1962, Kyle sold all or part[4] of the inventory. He did not, however, pay over the proceeds to P & M for distribution as called for by the liquidation agreement (paras. 2 & 8, note 3, supra). Rather, by the sort of self-help which generates so many bankruptcy problems, preferring the bird-in-hand with little care for the one-in-bush and apparently relying on "the validity of the old saw that possession is 9 points of the law," American Mannex Corp. v. Huffstutler, 5 Cir., 1964, 329 F.2d 449, 455, Kyle by-passed P & M to distribute to himself (see para. 8(3), note 3, supra) the amount of the notes plus interest.

As near as we can understand his theory, Kyle does not contend that this direct distribution was authorized by the agreement. Indeed, and to the contrary, his justification seems to be that all forgot the procedure prescribed in the formal agreement and what he did was largely in retaliation for similar self-help activities by fellow stockholders Mills and Black.[5] In short, what Black-Mills could do, he could do better.

Falling back on the frequent, much overworked and way too simplified, proposition that summary jurisdiction can reach only property in the possession, actual or constructive, of the bankrupt at the time of bankruptcy, Kyle asserts that since he, not the corporation, had possession on March 24, 1962, a full week before Mills and Black filed the voluntary petition in bankruptcy on April 1, the case had to be tried in a plenary suit. But as we pointed out in some detail, American Mannex Corp. v. Huffstutler, supra, 329 F.2d at 451 & n. 4, the physical possession—here uncontradicted—is not the statement of the solution, it is the beginning of the problem. Rather, "the question" is "whether the party has a *legal right* to maintain

3. The agreement provides:
"1. The complete inventory of P. & M. Mfg. Co. to be consigned to K. Kyle, with minimum prices and approximate quantity, shown on schedule A attached to this agreement.
"2. Payment for the inventory sold by K. Kyle will be made to P. & M. Mfg. Co., on the Monday following the week in which the inventory was sold. With the exception of authorized credit accounts.
"  *   *   *
"6. Payroll
"P. & M. Mfg. Co. to pay employees, with the exception of K. Kyle, through February 21, 1964. K. Kyle came off payroll, as of February 15, 1964.
"7. Utilities:
"All utilities to be discontinued or assumed by others on or before March 1, 1964.
"8. Proceeds of liquidation to be disbursed as outlined below:
"(1) Personal endorsed notes:

"(2) Utilities:
"(3) Notes of K. Kyle and Richard M. Mills
"(4) Supplies Invoices:
"(5) Balance to be distributed to stockholders after providing for the liability of the lease."

4. The way this case was presented the record is very confusing as to just what part of the inventory was sold, stored by Kyle in a warehouse, or allegedly transported by him to New Orleans. But under our affirmance, it does not matter. Whatever Kyle had, whether property, proceeds, or both, he must turn over.

5. This included taking possession of a truck, some $2,000 worth of inventory, collection of outstanding accounts receivable without accounting, the making of distorted intercompany bookkeeping charges as between P & M and their corporation Southern Gas, and the like.

the actual, physical possession." Ibid. (emphasis in the original). In testing whether that question may be resolved in a summary proceeding, "the mere assertion of a claim by an outsider," such as Kyle, "does not stop the bankruptcy proceeding in its tracks." Id. at 453. Rather, we have often held, "[a] preliminary inquiry is necessary and appropriate to ascertain whether the case is one for a summary proceeding or a plenary suit." Ibid. And in that preliminary inquiry,

> "[s]ince the mere assertion of a claim by an outsider is not sufficient to oust summary jurisdiction, it follows that the claimant must go further. Of course he need not prove the basis for his claim to the point where he obtains a favorable adjudication of it. But he certainly must go far enough to show, first, that there is an arguable factual basis for the claim, and, second, that on such factual basis there is some plausible ground for thinking that the law will afford redress."

329 F.2d at 454.

■ Applying this test, we think the District Court was clearly right in affirming the Referee's decision as to summary jurisdiction. There are, of course, instances in which an officer, director, or stockholder of a bankrupt corporation is entitled to a plenary suit. One such situation is where an incorporator and majority stockholder possesses property which he owned individually before incorporation and which he claims was never transferred to the corporation. See, e. g., In re M. H. Bekkedal & Sons, 7 Cir., 1935, 81 F.2d 337; In re Joseph R. Marquette, Jr., Inc., 2 Cir., 1918, 254 F. 419. Another such situation is where a minority stockholder, director, or officer possesses what was once corporate property under a claim that he

rightfully received it from the corporation, not to hold as a stockholder, director, or officer, but as a third party in payment of services performed for or money lent to the corporation.[6] But this case is not such a case. To be sure, Kyle was a minority stockholder. But he did not come into possession of the corporate property either as a creditor, a minority stockholder, or by virtue of action on his own. To the contrary, this liquidation agreement represented concerted corporate action by all of the stockholders, directors, and officers for them to act as liquidators. And in no sense was this a possession for his own interest or in his own right. The agreement very plainly prescribed that the inventory was "to be consigned" to Kyle and he, in turn, was to pay over the proceeds received on the sale of the inventory for further distribution by the corporation. That under paragraph 8(3) these stockholders out of self-interest undertook to prefer stockholder-creditors over trade accounts payable (para. 8(4), note 3, supra) does not change the character of either the undertaking or the obligations resting upon the stockholders acting as liquidators.

■ As the agreement so plainly states, its purpose, and the purpose of the stockholders acting under it in the receipt and handling of corporate property, was to effectuate a liquidation of the corporation. At this juncture, Florida policy has a decisive impact. This agreement, being in writing and signed by all of the stockholders, was effective as corporate action to set in motion a dissolution. Fla.Stat.Ann. § 608.27(2). When a corporation is dissolved or ceases to exist in any manner whatever, it is plain that subject only to a priority as to some State claims for taxes, etc. (see Fla.Stat.Ann. § 608.27(1) (b)), and

---

6. See, e. g., Ford v. Magee, 2 Cir., 1947, 160 F.2d 457, cert. denied, 1947, 332 U.S. 759, 68 S.Ct. 58, 92 L.Ed. 345 (officer and minority stockholder claiming he received the property in satisfaction of advances he made to corporation) ; In re Franklin Brewing Co., 2 Cir., 1920, 263 F. 512 (minority stockholder and officer claiming he received property in payment for services rendered to corporation) ; In re Superior Cutter Co., S.D.Cal., 1954, 122 F.Supp. 585 (officer claiming he received property for cancellation of notes corporation gave him).

the payment of costs of any judicial liquidating proceeding, the corporate property is held for the payment of debts due creditors either in full or ratably, the stockholders receiving only the balance remaining after the payment of all debts and expenses.[7]

■ This strong Florida policy is manifested in the statutory machinery which keeps a dissolved or expired corporation alive for a three-year period and imposes upon the directors of the corporation at the time of the dissolution the obligations of statutory trustees. Fla.Stat.Ann. § 608.30. In this structure serious obligations as fiduciaries are imposed upon these statutory trustees, one of the most important being the payment of all debts of the corporation. See Gould v. Brick, 5 Cir., 1966, 358 F.2d 437 [Apr. 6, 1966].

■ By virtue of the liquidation agreement re-enforced by this stringent Florida policy that creditors are to be paid first, the assets of the corporation held by Kyle, as well as those turned over to or taken by Mills and Black, were not held for the benefit of any such stockholder. Rather, they were held for the benefit of the corporation for distribution by it to creditors and, if any balance remains, to the stockholders. Kyle and his fellow stockholders were therefore put in the position of fiduciaries subject to the duty of either surrendering the property to the bankrupt or accounting for its proceeds since "property held or acquired by others for account of the bankrupt is subject to a summary order of the court which may direct an accounting and a payment over to the trustee * * *." May v. Henderson, 1925, 268 U.S. 111, 115, 45 S.Ct. 456, 458, 69 L.Ed. 870, 873. And the cases fully support the statement 2 Collier, Bankruptcy #23.06 [3], at 503, that "the possession of corporate property by the officers and agents of a bankrupt corporation will be deemed the possession of the bankrupt,

7. Fla.Stat.Ann. § 608.29:
"(1) When any corporation organized under part I of this chapter shall be dissolved or cease to exist in any manner whatever, the circuit court * * * on application of any creditor of stockholder * * * at any time, may either continue such directors as trustees, or appoint one or more persons to be receivers * * * to take charge of the estate and effects thereof * * * and to do all other acts which might be done by such corporation * * * that may be necessary for the final settlement of the unfinished business of the corporation. * * *

" * * * *

"(3) Such trustees or receivers, after payment of all allowances, expenses and costs, and the satisfaction of all special and general liens upon the property and funds of the corporation * * * shall pay the other debts due from the corporation if the funds in their hands shall be sufficient therefor, and if not, they shall distribute the same ratably among all the creditors who shall prove their debts * * *. They shall, if there be any balance remaining after the payment of such debts and necessary expenses * * * distribute and pay the same to and among those * * * who shall be justly entitled thereto, as having been stockholders of the corporation."

The payment of corporate debts to creditors before distribution to stockholders is many times emphasized. See, e. g., Fla.Stat.Ann. § 608.30, F.S.A.:

"(3)(a) The trustees shall take charge of the estate and effects of the corporation. They shall act with reasonable diligence * * * to collect the debts due and property belonging to the corporation and to pay such debts and claims as may be established against it so far as assets coming into their hands permit. * * *.

"(b) After paying or adequately providing for payment of the corporate debts, liabilities and obligations, they may divide the remaining assets ratably among the stockholders or, with the written consent of a majority of the voting stock, they may sell the remaining assets * * * and distribute * * * [the proceeds] ratably among the stockholders. * * *.

" * * * *

"(5) * * * Nothing in this section shall relieve the stockholders from ratable contribution, from any assets received in distribution, toward payment of any valid and enforceable claim made against them as distributees, or against the corporation, or relieve property coming to the hands of the trustees from any valid claim of lien or claim of right therein, * * *."

and they are, not adverse claimants." [8] We recognize, as we did in South Falls Corp. v. Rochelle, 5 Cir., 1964, 329 F.2d 611, 617, that those, as the stockholders here, in control of the bankrupt corporation, are within their rights "in exerting the control incident to * * * exclusive ownership" of the enterprise. But when they act "in this role, whatever control or possession * * * [they] had of the corporate bankrupt's * * * [property] was that of and for the Bankrupt itself. Such possession or control would not be sufficient to clothe * * * [such stockholders] with the status of an adverse substantial claimant."

■ In light of our holding that Kyle's possession was that of a fiduciary, no more than in May v. Henderson, supra, 268 U.S. at 118–119, 45 S.Ct. at 459, 69 L.Ed. at 875, did the debt owed him by the Bankrupt entitle him to a set-off under § 68, 11 U.S.C.A. § 108.[9]

■ With equal brevity, we may dispose of Kyle's further contention that since this liquidation agreement was not made for the benefit of all creditors, it did not amount to a general assignment for the benefit of creditors which, if made within four months of bankruptcy, would itself constitute an act of bankruptcy. § 3(a) (4), 11 U.S.C.A. § 21(a) (4). Granted, of course, that to constitute an act of bankruptcy the assignment must be general, 1 Collier, Bankruptcy #3.403, at 484, #3.404, at 486–87, our conclusion does not rest upon an implied finding that the liquidation agreement constitutes such a general assignment or that its execution and performance amounted to an act of bankruptcy. It is the fiduciary status created by the liquidation agreement that gives rise to the duty to account and which is enforceable in the summary proceeding.

Implicit in all we have said is, of course, our further conclusion that once summary jurisdiction is sustained, there was ample basis for the Referee's findings that this property, or its proceeds, or both, constituted property of the bankrupt for which Kyle had to account. And since the obligation to account and pay over does not rest upon any holding of a § 60(b) preference, 11 U.S.C.A. § 96 (b), the sufficiency of the evidence concerning known insolvency is immaterial.

We do not pass upon the many other arguments and contentions relating to the acts or conduct of Mills or Black or both. We are confident that the Bankruptcy Court will hold each of them fully accountable as a costockholder fiduciary with Kyle under the principles we have discussed.

Affirmed.

---

8. See, e. g., Lunsford v. Haynie, 5 Cir., 1949, 175 F.2d 603; Rabinovitz v. Oughton, 3 Cir., 1937, 92 F.2d 297; cf. In re Rosenberg, 7 Cir., 1942, 128 F.2d 924; see also Bagley v. Rowley, 7 Cir., 1942, 127 F.2d 139; In re Wein, D.Mass., 1926, 13 F.2d 426.

9. The authorities pressed by Kyle, In re Boston-Cerrillos Mines Corp., D.N.M., 1913, 206 F. 794; In re Lebrecht, W.D. Tex., 1905, 135 F. 878, are not to the contrary.