Robert YAQUINTO, Plaintiff-Appellee,

v.

F. Conrad GREER, Paul R. Steinman, and Jo Nell Pederson d/b/a Phoenix Financial Company, Defendants–Appellants.

Civ. A. No. CA3–87–1343–D.

United States District Court, N.D. Texas, Dallas Division.

Jan. 20, 1988.

Lewis S. Goodman and Roger L. Mandel, of Pulliam, Hale, Spencer, Goodman, Stanley, Pronske & Trust, P.C., Dallas, Tex., for Robert Yaquinto, plaintiff-appellee.

Gerald R. Velarde and Richard A. McKinney, of Dooley, Rucker, Maris & Foxman, Dallas, Tex., for Paul R. Steinman, defendant-appellant.

Robert K. Frisch, Dallas, Tex., for F. Conrad Greer and Jo Nell Pederson d/b/a Phoenix Financial Co., defendants-appellants.

## OPINION

FITZWATER, District Judge.

The bankruptcy court *sua sponte* recast a third-party, state law adversary proceeding as a turnover action prosecuted by the trustee. After a hearing, the court ordered defendants-appellants to turn over certain property to the debtor's estate and sanctioned two of them for dealing in debtor in possession funds. On appeal, the court affirms in part and reverses and vacates in part, the order of the bankruptcy court.

### I.

### BACKGROUND FACTS AND PROCEEDINGS BELOW

Atlantic Richfield Company ("ARCO") filed an adversary proceeding against F. Conrad Greer ("Greer"), Paul R. Steinman ("Steinman"), Jo Nell Pederson ("Pederson"), Alex Gelman ("Gelman"), Phoenix Financial Company ("Phoenix"),[1] and Greer Petroleum Corporation ("Petroleum"), a chapter 11 debtor, to recover the proceeds of a check for $182,179.42 that had been paid to Petroleum as a result of a clerical error. ARCO intended to send the check to

---

1. For the reasons set forth in its October 9, 1987 order, the court has treated Phoenix as the "dba" of appellant, Pederson, and not as a separate appellant, and has dismissed any purported appeal by Phoenix, separately. In this opinion, all references to Pederson, as an appellant, include her "dba," Phoenix.

a Fort Worth bank. It is unclear whether ARCO owed Petroleum any money or if, instead, ARCO only owed money to the bank in its capacity as an assignee of Petroleum's interests in various oil wells.

Greer, the president and sole owner of Petroleum, came into possession of the check and endorsed it to himself. Greer testified that he believed that approximately $66,000 of the amount of the check rightfully belonged to Petroleum, which was then in bankruptcy. Greer took the check, along with a notarized letter stating that Greer was authorized to execute checks and other instruments on behalf of Petroleum, to Steinman. Steinman is an attorney and personal friend and sometime business partner of Greer's.

Greer asked Steinman to deposit the check into a trust account that Steinman maintained for client funds. Greer testified that he believed he told Steinman that Petroleum was in bankruptcy. Steinman testified that Greer represented that Petroleum was formerly in bankruptcy but was no longer. Steinman was acquainted with Greer from prior business dealings and knew Greer to be the sole owner of Petroleum.

Steinman deposited the check into the trust account. Thereafter, Greer instructed Steinman to pay $32,000 of the money to Phoenix, which is solely owned by Pederson. Pederson was executive secretary and office manager of Petroleum at the time Petroleum filed for chapter 11 protection. She testified at the hearing that she had previously advanced $32,000 to Petroleum to help it financially. When Steinman was notified that the check had cleared, he wired $32,000 to Phoenix. Greer also instructed Steinman to pay $7,500 of the trust account funds to Gelman, an attorney and associate of Steinman. The money was to serve as a retainer for Gelman to represent Greer in a contempt hearing (not the hearing in question here) before the bankruptcy court. At the contempt hear-

ing, the bankruptcy court ordered Steinman to return to the bankruptcy court the balance of the proceeds from the check that remained in the trust account, which Steinman did. Subsequently, Gelman also delivered to the court the $7,500 that he had received from Steinman.

In its adversary complaint initiating the present action ARCO alleged that the defendants had converted funds belonging to ARCO. ARCO requested damages and a turnover to ARCO of the converted funds. The bankruptcy court convened a hearing at which all parties were present, including Robert Yaquinto, who had been appointed trustee of Petroleum. At the outset of the hearing the trustee moved that ARCO's action be dismissed. The trustee argued that ARCO's claim was not a core proceeding but was, instead, a state law cause of action for conversion pending in the bankruptcy court only because Petroleum was a debtor. After considering arguments on the trustee's motion the bankruptcy court decided to recast the ARCO action as a core proceeding for the turnover of funds to the estate. The bankruptcy court then ordered Greer, Steinman, Gelman, and Pederson to show cause why the court should not direct them to turn over the $32,000 to the estate and why they should not be sanctioned for dealing in debtor in possession funds. The bankruptcy court then immediately convened an evidentiary hearing for that purpose, to which procedure none of the parties objected.

At the conclusion of the hearing, the bankruptcy court held that the action was a core proceeding under 28 U.S.C. § 157 for the turnover of property to the debtor, and that Greer, Pederson, and Steinman were jointly and severally liable for the turnover of $32,000 to the trustee. The court also imposed sanctions upon Greer and Steinman, in the respective amounts of $25,000 and $10,000, for dealing in debtor in possession funds. The court thereafter entered a written order, which contained findings.[2]

---

**2.** The bankruptcy court's findings, which appear to include both findings of fact and conclusions of law, are as follows:

1. Conrad Greer, individually, received a $182,000 check dated September 3, 1985 made payable to Debtor;

This appeal, by Greer, Steinman, and Pederson d/b/a Phoenix, followed.

## II.

## DISCUSSION

### A.

Appellants first contend the bankruptcy court erred in entering a turnover order because ARCO's adversary complaint was not a turnover complaint under 11 U.S.C. § 542. Appellants point out that ARCO did not plead for turnover of the property to Petroleum, but instead sought damages from defendants for conversion and requested that the $32,000 be returned to ARCO. They therefore reason that the bankruptcy court erred in *sua sponte* characterizing the complaint as one for turnover. The trustee argues that the bankruptcy court was empowered by 11 U.S.C. § 105(a)[3] to convert the hearing to a core proceeding and did so pursuant to its authority to expedite a case, which authority the trustee contends is granted by § 105(a).

This court need not decide today whether a bankruptcy court's § 105(a) powers reach as broadly as the trustee contends. This is so because appellants failed to make proper objection in the bankruptcy court and, therefore, tried the turnover action by consent.

The essence of appellants' contention is that the bankruptcy court's turnover order does not conform to the pleadings. Appellants argue that the only complaint before the court set forth a state law conversion claim which requested that converted monies be returned to ARCO rather than to the debtor's estate. In an adversary proceeding such as the one below, however, Fed.R.Civ.P. 15 applies. *See* Fed.R.Bankr.P. 7015. The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding excessive formalism. *Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir.1985). Rule 15(b) provides that "[w]hen

---

2. Conrad Greer knew the Debtor was in a Chapter 11 bankruptcy proceeding and that Greer Petroleum Company was not entitled to the entire amount of the check;

3. Conrad Greer endorsed the check payable to himself during the pendency of the Chapter 11 proceeding. Conrad Greer then contacted his friend, lawyer and co-shareholder in another venture, Steinman for instructions on depositing the check in a trust account. This transaction was handled by Conrad Greer and Steinman for the purpose of taking the check and converting it from the Debtor in Possession to the order of Conrad Greer;

4. Steinman knew or should have known he was participating in the conversion of assets of the Debtor in Possession;

5. Conrad Greer acted together with Pederson and Phoenix to convert these funds to Phoenix for what was purportedly repayment of a loan made by Phoenix Financial but which was later testified to be payment for salaries earned but unpaid of Pederson allegedly owed by Greer Petroleum Company to Pederson. The Court finds the testimony of Pederson and Conrad Greer concerning the transaction to be contradictory, not credible, and evidence of a conspiracy to convert and utilize the funds of the Debtor in Possession; and

6. Steinman was on notice of the check's corporate and individual endorsements and testified that he knew within at least 48 hours that there was a problem with the check and

that Greer Petroleum Company was not entitled to the entire amount of the check. Steinman had handled a few bankruptcy cases in the past and he knew or should have known after reasonable inquiry that the Chapter 11 proceeding of the Debtor was ongoing. Steinman's purported reliance upon a letter signed by Conrad Greer authorizing Conrad Greer to act on behalf of Greer Petroleum Company is without merit. Steinman either knew or should have known that the endorsement of the check to the order of Conrad Greer, depositing the proceeds in Steinman's trust account and thereafter disbursing monies to Pederson d/b/a Phoenix as well as disbursing $7,500 to Gelman could not be accomplished without court order. This Court further finds that Steinman knew or should have known that the bankruptcy proceeding of the Debtor had not been dismissed.

7. Gelman is not culpable in the conversion of the funds of the Debtor.

3. 11 U.S.C. § 105(a):

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed.R.Civ.P. 15(b). It does not matter whether there has been a formal amendment to conform the pleadings to the evidence. Once issues are presented and argued without objection by opposing counsel, such issues are tried by the implied consent of the parties and are treated as if they had been raised by the pleadings. *Apple Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 389 (5th Cir.1984); *see also Sun-Fun Products, Inc. v. Suntan Research & Development Inc.,* 656 F.2d 186, 192 n. 7 (5th Cir. Unit B 1981).

 "In general, a finding of implied consent 'depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial.'" *Domar Ocean Transportation, Ltd. v. Independent Refining Co.,* 783 F.2d 1185, 1188 (5th Cir.1986) (quoting *Jimenez v. Tuna Vessel "Granada,"* 652 F.2d 415, 421 (5th Cir. Unit A 1981)). When, for example, the evidence also relates to an issue already in the case, it cannot realistically be said that a party impliedly consented to

the trial of that issue. *Id.; Jimenez,* 652 F.2d at 421. Appellants cannot claim here that they did not recognize that an unpresented issue had entered the case.[4] The bankruptcy court expressly presented the issues that it intended to decide, including whether appellants should be ordered to turn over $32,000 to the trustee. The court plainly informed the parties that it had recast the nature of the action and had altered the prosecuting party. Appellants had ample opportunity to object to the trial of a turnover action or to request additional time to prepare their respective cases. Their failure to do so necessitates the conclusion that they tried by consent the issues as restated by the bankruptcy court.[5]

### B.

 Appellants next contend that the bankruptcy court erred in ordering a turnover because the complaint was not brought by the trustee or the debtor in possession. Relying principally upon Fed. R.Bankr.P. 7001 and 7003 and a Utah bankruptcy court decision, appellants contend the complaint could only have been filed by the trustee or the debtor because one of

---

4. Steinman, an attorney who had handled a few bankruptcy cases, but who is not a bankruptcy practitioner, proceeded *pro se* at the hearing. He does not squarely argue in this court that his status below as a *pro se* litigant should excuse him from the procedural obligations imposed upon litigants represented by counsel. He does contend that he is not a bankruptcy lawyer, that he came to the bankruptcy court hearing expecting to defend against a state court conversion action and not "on a moments [sic] notice to defend himself against a bankruptcy turnover action," and that it was thus error for the bankruptcy court to fail to give him proper notice of the action against him. (Steinman Br. at 13). Greer also proceeded *pro se* at the bankruptcy court hearing. Greer argues in his brief that he expected at the hearing "to defend against a state court conversion action," that he "had no notice that the Complaint would be converted to a turnover action," and that the bankruptcy court's failure to give him proper notice of the action was erroneous. (Greer and Pederson Br. at 14). Neither Steinman nor Greer, however, has briefed the question whether his status as a *pro se* litigant entitles him to any special deference. Where a matter is not briefed, the appellate court will not consider it. *See Holloway v. HECI Exploration Co. Employees' Profit Sharing*

*Plan,* 76 B.R. 563, 572 (N.D.Tex.1987), *appeal docketed.* At *infra* note 6, the court holds that Steinman and Greer waived their inadequate notice arguments by failing to object in the bankruptcy court.

5. Appellants cite *In re Prestige Spring Corp.,* 628 F.2d 840 (4th Cir.1980), for the proposition that a bankruptcy court may not decide a case on a theory not raised by the pleadings. In that case, however, there was no evidence presented on the theory at issue and, therefore, no opportunity to object. *See id.* at 842. The other opinion appellants cite, *In re Golden Plan of California, Inc.,* 812 F.2d 1088 (9th Cir.1986), has been withdrawn and was apparently replaced by a second amended opinion. *See In re Golden Plan of California, Inc.,* 829 F.2d 705 (9th Cir. 1986). Because it is unclear from the Ninth Circuit's second amended opinion whether appellants objected in the bankruptcy court to any deficiency in the pleadings or to a lack of notice of the trustee's fraudulent conveyance claim, and because the Ninth Circuit does not address the applicability of Fed.R.Civ.P. 15(b) or the proposition that appellants tried the issue by consent, this court declines to follow *In re Golden Plan of California* to the extent it is contrary to the court's decision today.

those parties bears the applicable burden of proof. Appellants note that the trustee not only failed to file the complaint but initially urged the bankruptcy court to dismiss the ARCO action.

The court finds nothing in Fed.R. Bankr.P. 7001 or 7003 to support the proposition that a turnover action must initially be filed by the trustee or debtor in possession. Rule 7001 has been interpreted to require that a turnover claim be asserted in an adversary proceeding. *See In re Domestic Fuel Corp.,* 70 B.R. 455, 463 (Bankr.S.D.N.Y.1987). The Rule has not been construed to require that such an adversary proceeding be commenced initially by the trustee or debtor in possession. Neither does *In re Riding,* 44 B.R. 846 (Bankr.D.Utah 1984), on which appellants rely, nor other like cases, stand for this proposition. These cases hold, instead, that a turnover action must be litigated as an adversary proceeding rather than by motion. *See, e.g., id.* at 859; *In re Domestic Fuel Corp.,* 70 B.R. at 463; *In re Ace Industries, Inc.,* 65 B.R. 199, 200 (Bankr. W.D.Mich.1986); *In re Lion Capital Group,* 46 B.R. 850, 855–56 (Bankr.S.D.N. Y.1985).

 It is reasonable to conclude, of course, that at some juncture in a turnover action the trustee or debtor must prosecute the claim because the burden of proof is at all times upon the party seeking turnover. *See In re Weiss–Wolf, Inc.,* 60 B.R. 969, 975 (Bankr.S.D.N.Y.1986). It is only logical to assume that the prosecuting party and the party with the burden of proof should be the same. The court need not decide today whether the trustee or debtor must, in the first instance, file the adversary proceeding or may, as here, prosecute the proceeding after it has been filed by another litigant. This is so because appellants failed to preserve any error by inter-

posing an objection to the procedure followed by the bankruptcy court.[6]

### C.

 Appellants also challenge the authority of the bankruptcy court to enter a final turnover order on the ground that the matter in question was not a core proceeding.

The court does not find to be determinative the fact that ARCO's complaint, as originally cast, may not have constituted a core proceeding. Because appellants are deemed to have acquiesced in the bankruptcy court's restatement of the matter, it is the character of the action as so recast, rather than the original complaint, that is relevant. The bankruptcy court entered an order requiring the turnover of property to the estate of a bankrupt, which is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(E).

### D.

Appellants next challenge the merits of the bankruptcy court's turnover order. They first contend that there was no or insufficient evidence that the $32,000 was the property of the Petroleum estate.

 This court reviews the factual findings of the bankruptcy court, and the inferences to be drawn therefrom, in accordance with the clearly erroneous standard. *In re Ambassador Park Hotel, Ltd.,* 61 B.R. 792, 798 (N.D.Tex.1986); Fed.R. Bankr.P. 8013. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, an appellate court may not reverse it. *Id.* at 573–74, 105 S.Ct. at 1511–12.

6. Because appellants failed to object, their argument that they were deprived of adequate notice of the nature of the hearing must likewise fail. Moreover, to the extent appellants inferentially present the question whether the court below had jurisdiction to enter the turnover order, the court rejects appellants' argument. The bankruptcy court possessed subject matter jurisdic-

tion because the adversary proceeding arose in title 11. *See Holloway,* 76 B.R. at 568 (turnover proceeding arises in title 11) (citing *Central Maine Restaurant Supply v. Omni Hotels Management Corp.,* 73 B.R. 1018, 1022 n. 11 (D.Me.1987)). Appellants waived any objection to *in personam* jurisdiction by participating in the hearing.

■ The trustee had the initial burden to prove that the property in issue was the property of the estate. *See In re Williams*, 61 B.R. 567, 570 (Bankr.N.D. Tex.1986). The bankruptcy court concluded that the trustee had carried his burden, for the court below found that the monies in question were "assets of the Debtor in Possession." (Finding No. 4). This finding is not clearly erroneous.

While it may be argued that Petroleum did not ultimately have the right to keep the $32,000, 11 U.S.C. § 541(a)(1) defines the property of the estate as including all legal or equitable interests of the debtor in property. The check was made payable to Petroleum. Therefore, at the time of receipt, the $32,000 check was the property of the Petroleum estate and subject to a turnover action. *See Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 967–68 (5th Cir.1983) (even if all or part of sum of money were subject to constructive trust, where estate had legal interest in property, property was required to be turned over in order for bankruptcy court to decide entitlement to sum).

### E.

Greer and Steinman attack the turnover order on the ground that there was no evidence that they possessed the $32,000. The trustee contends that parties need not, in all cases, have been in actual possession of the estate's property at the time of the turnover hearing in order for the bankruptcy court to order a turnover and that Greer and Steinman can be required, as fiduciaries of Petroleum, to turn over the property, even if they are not in possession, if they intentionally diverted the property in breach of the fiduciary relationship.

■ The court agrees with appellants that, except in limited circumstances, the party with the burden of proof must demonstrate that the property sought to be turned over is in the possession or control of the defendant at the time the turnover proceeding is commenced. "The plain meaning of 11 U.S.C. § 542(a) and the very nature of a turnover proceeding teaches

that a trustee must still sustain such a burden under the Bankruptcy Code." *In re De Berry*, 59 B.R. 891, 896 (Bankr.E.D. N.Y.1986); *see also In re Bell & Beckwith*, 44 B.R. 659, 660 (Bankr.N.D.Ohio 1984). The party seeking the turnover has the burden of proving such possession or control. *In re Bathrick*, 1 B.R. 428, 432 (Bankr.S.D.Tex.1979).

In the present record, there is no evidence, nor did the bankruptcy court find, that either Greer or Steinman possessed the $32,000 at the time the turnover proceeding commenced. The trustee must therefore rely on an exception to the general rule, which applies in the case of a fiduciary of a debtor who intentionally diverts the debtor's property in breach of that relationship. *See May v. Henderson*, 268 U.S. 111, 119, 45 S.Ct. 456, 460, 69 L.Ed. 870 (1925); *Kyle v. Stewart*, 360 F.2d 753, 758 (5th Cir.1966).

■ Although the bankruptcy court's findings are not expressly predicated upon a fiduciary-diversion-of-funds theory, the court did find that Greer acted together with Pederson and Phoenix to convert the funds to Phoenix and that the Greer–Steinman transaction was entered into for the purpose of converting the funds from Petroleum to Greer. This finding is based upon the bankruptcy court's assessment of the credibility of the witnesses,[7] which assessment usually will not be held to be clearly erroneous. *See* Fed. R.Bankr.P. 8013 ("due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 223 (2d Cir.1957) (bankruptcy referee's findings of fact based in part upon judgment of credibility must be given great weight). Moreover, there is ample evidence in the record that Greer, as president and sole shareholder of Petroleum, was Petroleum's fiduciary and hence responsible for any of its property that came into his possession. *Cf. Kyle*, 360 F.2d at 758 (stockholders who held assets of bankrupt company were "fiduciaries subject to the

---

7. *See* Finding No. 5, set forth *supra* at note 2.

duty of either surrendering the property to the bankrupt or accounting for its proceeds"). It is reasonable to infer from the bankruptcy court's findings that the court found Greer, as a Petroleum fiduciary, to have diverted Petroleum funds in breach of his fiduciary duty. Thus, there is no necessity that the trustee have shown, or that the bankruptcy court have found, that Greer possessed the $32,000 at the time the turnover proceeding commenced. The bankruptcy court properly held Greer liable for the return of the money.

■■■ The same cannot be said with respect to Steinman, however. From the court's review of the record,[8] it finds no evidentiary basis for concluding that Steinman was a fiduciary of Petroleum. Steinman's dealings with Greer were conducted between two individuals. When Greer delivered the check to Steinman for deposit to Steinman's trust fund account, the check had been signed over to Steinman, individually. Steinman did no more than follow Greer's instructions regarding the check. Accordingly, there is no basis for concluding that Steinman is liable to Petroleum as a fiduciary who diverted the debtor's funds.[9]

### F.

Finally, Greer and Steinman challenge the bankruptcy court's imposition of sanctions against them. Greer contends the sanctions are unwarranted and excessive. Steinman argues that sanctions cannot be imposed against him because he did not have actual knowledge of Petroleum's bankruptcy.[10]

Although neither Greer nor Steinman raises the issue, this court must decide as a threshold matter whether the bankruptcy court possessed the authority to impose sanctions upon appellants. *See Save the Bay, Inc. v. U.S. Army,* 639 F.2d 1100, 1102 (5th Cir.1981); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (federal courts may raise issue of subject matter jurisdiction *sua sponte* at any stage of proceeding). The court concludes that the sanctions were imposed for criminal contempt and that the court below lacked criminal contempt authority.

■■■ To ascertain that the sanctions imposed were in fact for criminal contempt, this court is guided by the general test of discerning the trial court's apparent purpose for levying the judgment of contempt. *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 399 (5th Cir. 1987) (citing *Thyssen, Inc. v. S/S CHUEN ON,* 693 F.2d 1171, 1173–74 (5th Cir.1982); *Smith v. Sullivan,* 611 F.2d 1050, 1053 (5th Cir.1980); *Lewis v. S.S. BAUNE,* 534 F.2d 1115, 1119 (5th Cir.1976)). Sentences for criminal contempt are punitive in their nature and are imposed primarily for the purpose of vindicating the authority of the court. *Crawford Enterprises,* 826 F.2d at 399 (citing *United States v. Rizzo,* 539 F.2d 458, 462–63 (5th Cir.1976)). In contrast, sanctions for civil contempt are meant to be "wholly remedial" and serve to benefit the party who has suffered injury or loss at the hands of the contemnor. *Id.* (citing *Southern Railway Co. v. Lanham,* 403 F.2d 119, 124 (5th Cir.1968)).

■■■ Civil contempt lies for refusal to do a commanded act, while criminal contempt lies for doing some forbidden act. A judgment of civil contempt is conditional,

---

**8.** The bankruptcy court made no express finding of fact regarding Steinman's relationship to Petroleum, and the balance of the bankruptcy court's findings do not support an inference as to the nature of the relationship. This court is not obligated, therefore, to apply the clearly erroneous standard.

**9.** Steinman also apparently contends that he is entitled to an 11 U.S.C. § 542(c) exemption from liability because he did not have actual knowledge of the Petroleum bankruptcy and that the bankruptcy court's finding that Stein-

man did have, or should have had, actual knowledge is clearly erroneous. Because the court has already invalidated the turnover order against Steinman on other grounds, the court does not decide this question.

**10.** Greer and Steinman both additionally argue that sanctions cannot be imposed because there was insufficient evidence that the check was the property of Petroleum. The court has already rejected this contention.

and may be lifted if the contemnor purges himself of the contempt, while punishment for criminal contempt is unconditional. *Skinner v. White*, 505 F.2d 685, 688–89 (5th Cir.1974); *see also Shillitani v. United States*, 384 U.S. 364, 370 n. 5, 86 S.Ct. 1531, 1535 n. 5, 16 L.Ed.2d 622 (1966) ("[A] criminal contempt proceeding would be characterized by the imposition of an unconditional sentence for punishment or deterrence."). An appellate court will look to whether the sanction runs only in favor of a private party, rather than to the court or the United States, and whether payment of the sanction will allow the contemnor to purge himself of the contempt. *See, e.g., Crawford Enterprises*, 826 F.2d at 399.

■ In the present case, the bankruptcy court sanctioned Greer and Steinman for dealing in debtor in possession funds. The fines levied were not imposed conditionally; that is, they were not to be lifted, in whole or in part, if appellants purged themselves of the contempt by returning the $32,000. The fines did not serve to benefit the party who had suffered injury. Although a portion of the sanctions was to be paid to the trustee, and ARCO's and the trustee's counsel were to be paid attorney's fees out of this portion, it is apparent from the record that the bankruptcy court's primary purpose for imposing sanctions was not remedial.[11] There is no apparent relationship between the amount of the sanction and Petroleum's loss, if any. The bankruptcy court's intentions, both as announced at the outset of the hearing and as manifested in the court's order, evince an intent to punish appellants, not to coerce compliance. The former genre of sanction is criminal in nature, the latter is civil. *See Douglass v. First National Realty Corp.*, 543 F.2d 894, 898 (D.C.Cir.1976).

■ Several courts have held that the contempt power is inherently judicial and cannot constitutionally be vested in a non-Article III court. *See, e.g., In re Continental Air Lines, Inc.*, 61 B.R. 758, 775 (S.D.Tex.1986); *In re Industrial Tool Distributors, Inc.*, 55 B.R. 746, 750–51 (N.D. Ga.1985); *In re Cox Cotton Co.*, 24 B.R. 930, 947 (E.D.Ark.1982), *vacated on other grounds sub nom. Lindsey v. Ipock*, 732 F.2d 619 (8th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). Other courts have not reached the constitutional question, holding that the bankruptcy court has no statutory authority to exercise the contempt power. *See In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281, 1284–91 (9th Cir.1987); *In re Industrial Tool Distributors, Inc.*, 55 B.R. at 748 (criminal contempt).[12] Finally, some courts, including this one, have held that the bankruptcy court has at least civil contempt authority. *See Kellogg v. Chester*, 71 B.R. 36, 38–39 (N.D.Tex.1987) (Sanders, J.); *Better Homes of Virginia, Inc. v.*

---

11. At the outset of the hearing, the bankruptcy judge stated:

> I want Mr. Greer, the lady [Pederson] on behalf of herself and Phoenix, Greer on behalf of himself and Greer Petroleum and Steinman to show me cause why I shouldn't direct the restoration turnover of the $32,000 and why they should not be sanctioned for dealing in [debtor in possession] money.

(Tr. 16)
The bankruptcy court's order imposing sanctions provides, in part:

> 2. Conrad Greer is sanctioned $25,000 for the conversion of the $182,000.00 check and this amount shall be paid to Robert Yaquinto, Trustee, within 30 days of the date of entry of this Order. The $25,000 will be held by the Trustee subject to an application by Gardere and Wynne, attorneys for Atlantic Richfield Company for reimbursement on behalf of Atlantic Richfield Company of some portion of attorneys' fees, such application shall be a

matter to be set and heard by the Court at a later date;
> 3. Steinman is sanctioned $10,000 which will be paid within 15 days of the date of entry of this Order. $5,000 of this amount will be set aside in a special account by the Trustee for the payment of his counsel pertaining to this proceeding and the ultimate consequences of this proceeding.

\* \* \* \* \* \*

12. The statutory problem appears to have been resolved by the recent amendments to the Bankruptcy Rules. Fed.R.Bankr.P. 9020 authorizes the bankruptcy court to issue contempt orders. However, if appealed, these are to be reviewed by the district court *de novo*. The Advisory Committee Note to the Amendment comments: "This rule, as amended, recognizes that bankruptcy judges may not have the power to punish for contempt." *See* Fed.R.Bankr.P. 9020 Advisory Comm. Note (1987).

*Budget Service Co.*, 52 B.R. 426, 429–31 (E.D.Va.1985), *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986).[13]

■ No court, however, has held that the bankruptcy court has criminal contempt power. The 1978 Bankruptcy Code does not authorize the bankruptcy court, by its own power, to issue a criminal contempt sanction. The recently enacted amendments to the Rules provide that the bankruptcy court may, after written notice and a hearing, issue a criminal contempt order to be reviewed *de novo* by the district court. Fed.R.Bankr.P. 9020 & 9033; *see In re Wright*, 75 B.R. 414, 415 (M.D. Fla.1987) (bankruptcy court cannot punish, as criminal contempt, conduct occurring outside of judge's presence; after giving notice and holding hearing, bankruptcy court must certify facts to district court). Although the bankruptcy court sanctioned Greer and Steinman in this case before these amendments became effective, the bankruptcy court did not have greater contempt authority before the amendments were promulgated. The new rules are not a limitation on the contempt power of the bankruptcy court, but rather serve to give it statutory grounding. At the time the bankruptcy court issued its order, the court had no authority to issue a criminal contempt sanction. *See In re Industrial Tool Distributors, Inc.*, 55 B.R. at 750.

### III.

The portion of the order that holds Steinman jointly liable for the turnover of $32,-000 is reversed. The sanctions imposed upon Greer and Steinman are vacated. In all other respects the order appealed from is affirmed. Costs of this appeal are taxed as follows, pursuant to Fed.R.Bankr.P. 8014: Steinman's costs shall be taxed to Yaquinto; Greer's costs shall be taxed 60% to Greer and 40% to Yaquinto; Pederson's costs shall be taxed to Pederson; Yaquinto's costs shall be taxed to Pederson and Greer, except to the extent they constitute

13. With respect to a *civil* contempt matter, at least, the bankruptcy court does have jurisdiction to initiate contempt proceedings and to conduct show cause hearings. *See United States v. Revie*, 834 F.2d 1198, 1205–06 (5th Cir.1987)

the costs of Steinman taxed to Yaquinto or the 40% of Greer's costs that are taxed to Yaquinto.

AFFIRMED in part; REVERSED in part; VACATED in part.

(affirming district court's criminal contempt finding for defendant's willful failure to obey bankruptcy court's civil contempt show cause order).